[No. B106486. Second Dist., Div. One. Nov. 16, 1998.]

MAJOR CLIENTS AGENCY, Plaintiff and Appellant, v. JOHN DIEMER, Defendant and Respondent.

Bronson, Bronson & McKinnon, Barry B. Langberg and Deborah Drooz for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Kurt C. Peterson, James C. Martin, M. Reed Hunter and Matthew A. Smith for Defendant and Respondent.

## OPINION

**DUNN, J.**\*—This appeal is from the judgment of dismissal in favor of the respondent entered on July 25, 1996, following the trial court's order sustaining a demurrer without leave to amend. We affirm.

### A.  *Factual and Procedural Background*

Writer-producer Jeff Franklin (hereinafter Franklin) hired appellant Major Clients Agency (hereinafter Major Clients) as his agent, to negotiate a contract between himself as writer-producer and Lorimar Productions, Inc. (hereinafter Lorimar). Franklin also hired an attorney, respondent John Diemer (hereinafter Diemer). Diemer was not hired as Major Clients' attorney. Major Clients and Diemer were both involved in the contract negotiations. The contract that was negotiated contained a commission agreement between Major Clients and Franklin, which was based upon revenue to be received by Franklin pursuant to the contract. Major Clients' two shareholder principals included Richard Weston, an attorney and former president of Paramount Television.

The contract between Franklin and Lorimar was negotiated in 1988 and again in 1990 and contained the provisions that (1) Franklin was entitled to certain financial benefits from the television series which he had created, *Full House*, for the life of the series, provided that he serve as executive

---

\*Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

producer for at least one year; and (2) Franklin was to participate in the profits derived from such a series after rendering executive producer services for one year. Another provision in the contract was that the studio had the right to assign Franklin to, or remove him from, any series during the contract term.

Prior to the expiration of the one-year period specified in the contract, Lorimar removed Franklin from the position of executive producer in the *Full House* series and another series he was developing, *Hanging With Mr. Cooper*. Lorimar then took the position that Franklin was not entitled to the above stated benefits of the contracts for the reason that he had not served the required year. Franklin sued Lorimar. The case was settled.[1] In the settlement agreement, Franklin surrendered his claim to a substantial fee entitlement. As a result of this surrender, a dispute arose between Franklin and Major Clients regarding the amount of commission to which Major Clients was entitled. Major Clients filed a petition in arbitration for fees and Franklin cross-claimed. This controversy was decided in arbitration by settlement.[2]

On February 5, 1996, Major Clients brought suit against Diemer. In its second amended complaint, Major Clients alleged a single cause of action for indemnity for damages it claimed it had sustained as a result of the lawsuit and settlement between Franklin and Lorimar. Appellant's theory was that Diemer had not, on Franklin's behalf, adequately monitored the 1988 and 1990 contract negotiations between Major Clients and Lorimar. Diemer's demurrer to the complaint was sustained without leave to amend on July 25, 1996, and the suit was dismissed. This appeal was timely taken on September 30, 1996.

## B.    *Contentions of the Parties*

Major Clients contends that Diemer failed to recognize and alert his client, Franklin, to the potentially adverse consequences of the language in certain provisions of the contract between Lorimar and Franklin. Appellant contends that the language of a "lock in" provision, a "vesting" provision, and "another contract provision" was worded in such manner that the studio was able "to assign Franklin to, or remove him from, any [television] series

---

[1]The terms of the settlement have not been provided in the record. There is no mention of whether Major Clients did or did not have an obligation to pay Franklin any sum. The record reflects only that Major Clients has entered into a confidential settlement agreement with Franklin. There is no allegation in the record that there is, in the settlement agreement, a disclosure clause.

[2]The petition of Major Clients and the cross-claim of Franklin both focus upon the controversy regarding agency commissions on profit participation revenue. The settlement specifics of this controversy are not in the record.

during the contract term" so that he was prevented from ever receiving any profits from or being "locked-in" to a series which he had created. "As Franklin's transactional attorney, it was [Diemer's] duty to review the legal language proposed by Lorimar and to ensure that [the] language . . . protected [Franklin's] interest. . . ."

Diemer, in response, asserts that he did not owe to Major Clients any legally cognizable duty of care and Major Clients therefore cannot plead facts sufficient to support a cause of action.

### C. Standard of Review

We review the sufficiency of Major Client's pleading against the general demurrer sustained by the trial court, treating the demurrer " 'as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, . . . [citation] . . . without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 939 [175 Cal.Rptr. 81].) It is error to sustain a demurrer where a plaintiff has stated facts sufficient to state a cause of action under any possible legal theory. (*McDonald* v. *Superior Court* (1986) 180 Cal.App.3d 297, 303 [225 Cal.Rptr. 394].) "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory." (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

### D. The Cause of Action for Equitable Indemnity

#### 1. The Issue

First, Franklin sued Lorimar. The case was settled. Franklin and Major Clients resolved their controversy over commissions by settlement in arbitration. Major Clients then sued Diemer seeking indemnity for damages allegedly suffered due to Diemer's alleged professional negligence in representing Franklin.

The issue presented by this scenario is: has an attorney, who has allegedly negligently negotiated a contract for his client, an obligation to indemnify his client's representative, who concurrently negotiated the contract, for damages paid by the representative to the client as settlement for the loss resulting from the alleged negligent negotiations? To state the case another way: where a party sues his representative for damages for alleged negligence in negotiating a contract and that claim is resolved by settlement, is the party's representative entitled to indemnity from the party's attorney who concurrently participated in the contract negotiations?

The trial court, by its decision, answered the question in the negative.

2. *The Theory of the Second Amended Complaint and of the Response*

In its second amended complaint for equitable indemnity, Major Clients alleged that Diemer, who held himself out to be an expert in entertainment transactions, rendered legal advice to Franklin and Major Clients in negotiating the 1988 and 1990 contract agreements, with the understanding they would rely on it. Major Clients alleged that Diemer was negligent in the negotiations as a result of which Major Clients suffered damages. Major Clients alleged that it is entitled to indemnification from Diemer for its attorney's fees and costs incurred in defending Franklin's cross-claim in the Franklin-Lorimar legal controversy, and for "the sums to which Major Clients may be required to pay to Franklin in connection with the Cross-Claim . . . ." Major Clients posits that because its interests, and those of Franklin in the Lorimar contract, were the same or similar, Diemer's alleged legal errors vis-à-vis their mutual client Franklin was somehow misfeasance as to it.

Diemer countervails by pointing us to a series of cases which deal with the issue of suits between original and successor attorneys and urges that they are controlling authority for the position that the trial court correctly sustained the demurrer.

3. *The Trial Court Decision*

The trial court sustained the demurrer to the amended complaint on the basis that the complaint failed to state a claim upon which relief could be granted. Leave to amend was denied.

4. *Legal Theories Presented on Appeal*

Major Clients relies principally upon the rationale of *Parker v. Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197], as authority for its position

that it is entitled to indemnity. Attorney Parker, who represented Mrs. Peterson in her dissolution proceeding, failed to assert a community property interest in her husband's military pension. Mrs. Peterson sued Parker for negligence and engaged Attorney Morton to rectify the failure of Parker to assert her rights in the pension. Morton, likewise, failed to pursue her community property claim. Parker cross-complained against subsequent Attorney Morton for indemnity asserting that Morton's negligence had caused or exacerbated the damages which Mrs. Peterson claimed in her suit against Parker. The appellate court reversed the trial judge's grant of summary judgment, applied ordinary tort principles of indemnity, and held that proportionate indemnity was available to a subsequent tortfeasor attorney from the original tortfeasor attorney. *Parker* is an exception to the general rule established in successor attorney malpractice cases and is illustrative that the attorney malpractice cases are an exception to the general principles upon which indemnity is based.

Major Clients presents an elaborate argument that the authorities presented to the court by Diemer which prohibit actions against an adversary's counsel "are so factually distinguishable from this case that the rationale which they advance for imposing the prohibition simply does not exist here." He argues that prior cases have involved claims between successive attorneys, and that is absent here. Accordingly, there is no threat to the concept of undivided loyalty by the attorney to his client. We find this argument to be invalid because the issue is not whether the parties are in precisely the same positions as those considered in previous cases, but rather, whether the threat of an indemnity lawsuit will affect the attorney's dedication to the cause of his client.

Major Clients also argues that, unlike the situation in the case of *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422], Diemer was not faced with alternative courses of action from which to choose and was not presented with a conflict between his client's best interests and those of the client's representative, Major Clients. He had no tactical choice to make inasmuch as he had a clear duty to interpret the contract in his client's best interest. Since there was no discretionary decision to be made, no professional judgment was involved. Diemer merely failed to recognize a flaw in the contract, and thereby failed in his duty to his client. Thus, the undivided loyalty rationale of *Held* is inapplicable. We reject this argument for the reason that even where there is but one course of action for an attorney to follow, the attorney must be free from the threat of potential liability in order to devote undivided loyalty to the client. Major Clients was a potential adversary on the issue of commission fees which became an actual adversary when it sued Franklin for fees. If an attorney is saddled with a duty to a

potentially adverse party, then his loyalty to the client cannot be undivided.. (See *Holland* v. *Thacher* (1988) 199 Cal.App.3d 924, 934-935 [245 Cal.Rptr. 247]; *California State Auto. Assn. Inter-Ins. Bureau* v. *Bales* (1990) 221 Cal.App.3d 227, 232-233 [270 Cal.Rptr. 421].)

Major Clients argues the inapplicability of *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326] for the same reason. In that case, the court said that "[l]awyer II should not be required to face a potential conflict between the course which is in his client's best interest and the course which would minimize his exposure to the cross-complaint of lawyer ·I." (*Id.* at p. 356.) Diemer, it argues, had no such dilemma. Major Clients argues further the inapplicability of *Lewis* v. *Purvin* (1989) 208 Cal.App.3d 1208 [256 Cal.Rptr. 827], on the basis that Diemer and Major Clients were not adversaries, but worked together, in the negotiation of Franklin's contract. In *Lewis*, by contrast, the relationship between the first attorney and the second attorney was at all times adversarial. Major Clients, in sum, urges that *Parker* is authority for the proposition that "when the attorney's negligence does not arise from his choice between two uncertain alternative remedies but rather arises from his failure to perform a duty that he owes to his client as a matter of law, the public policy argument has no bearing and an action for indemnity is appropriate." It urges reversal on the basis that disallowing its suit thwarts the policy of ensuring that each tortfeasor who contributes to a loss should bear the loss in proportion to each tortfeasor's own fault.

Diemer counters with the rationale of the *Held* case and argues that, in accord with its principles, "the compelling public policies of confidentiality and undivided loyalty which lie at the heart of the attorney-client relationship, preclude third parties suing attorneys retained by 'actual or potential adversaries' for professional negligence." Moreover, actions by a nonclient against an attorney are limited to those situations where the nonclient was the intended beneficiary. Finally, he argues that the elements of an indemnity claim have not been pled and, in any event, the claims are barred by the applicable statute of limitations.

### E.  *Discussion*

#### 1.  *Stating a Cause of Action for Equitable Indemnity*

The case before the bench, unlike *Parker* v. *Morton, supra,* 117 Cal.App.3d 751, and some of the other cases relied upon by the parties, is not a successor attorney claim. This case involves a third party, Major Clients, that has made a claim against the attorney who represented their

mutual client, Franklin, asserting that the attorney's incompetence as to his client was the cause of damage to the third party. Thus, the case authority involving successor attorneys relied upon by counsel in their argument to the court are not directly on point. We examine the argument and the rationale, nonetheless, highlighting that even assuming that this case is analogous to successor attorney malpractice cases, the weight of authority is that indemnity is not available.

■ We hold that the trial court properly sustained the demurrer to the first amended complaint without leave to amend, thus denying Major Clients any claim for equitable indemnity.

Indemnity was not available at common law. The doctrine is a development of California case law and was first utilized in the case of *City & County of S. F.* v. *Ho Sing* (1958) 51 Cal.2d 127 [330 P.2d 802]. In that case, Justice Carter wrote for the court that the city had a right to recover from a property owner the $5,000 sum it had paid of a $15,000 settlement to a third party who was injured as a result of the property owner negligently modifying a public sidewalk. (At pp. 128-129, 138.) Even though the city had the primary responsibility to maintain the sidewalk, its "passive" negligence allowed it to shift the entire burden of loss incurred by settlement or judgment to the "active" tortfeasor. This case is illustrative that, as originally conceived, any party who had actively participated in the wrongful conduct was denied indemnity. (See also *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco* (1968) 267 Cal.App.2d 881, 885-889 [73 Cal.Rptr. 660]; *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].)

Indemnity is predicated upon concepts such as: "[T]he key ingredient in equitable indemnity: [is] equity. Where that element is missing, the complaint fails to state a cause of action . . . ." (*Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 428 [190 Cal.Rptr. 400].) ■ "The right [of indemnity] depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case. [Citations.]" (*Herrero* v. *Atkinson, supra,* 227 Cal.App.2d at p. 74.) "[I]n the case law of equitable indemnity . . . one point stands clear: there can be no indemnity without liability. In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity. [Citation.]" (*Munoz, supra,* at p. 425.) "[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." (*Christian* v. *County of Los*

*Angeles* (1986) 176 Cal.App.3d 466, 471 [222 Cal.Rptr. 76].) "It is well settled that a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment. [Citations.]" (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505].)

After comparative negligence was adopted in California (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), the rule of equitable indemnity was modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899].)

■ The court in the case of *Parker* v. *Morton, supra,* 117 Cal.App.3d at page 756 states: "It is the general rule that a subsequent tortfeasor who by his negligence exacerbates the damages suffered by an already injured party may be named as a cross-defendant by the party whose negligence caused the original injury and who, therefore, may be held liable to the injured party for all of his damages including those resulting from the subsequent negligence. [Citations.] This rule derives from several well-recognized legal principles all of which foster the public policy of encouraging persons to conduct themselves with reasonable care: that every person should be responsible for the consequences of his negligent conduct [citations]; that as between tortfeasors who contribute to a loss each shall bear the loss in proportion to his fault [citations]; and that an injured person must himself take reasonable action to mitigate his damages [citations]." The basis of Major Clients' claim rests on these general principles.

Given these rules as established by *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, and subsequent cases it would seem, at first blush, that general rules of indemnity and contribution would allow a claim where a lawyer who is sued for malpractice by his client, in turn, sues the successor lawyer for indemnity on the theory that the conduct of the successor lawyer contributed to the loss suffered by the client. Not so. The cases dealing with this issue take the position that as to attorneys, policy considerations militate against such a rule. A brief review of several typical cases is illustrative.

2. *The Attorney Exception*

In the case of *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], which preceded *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, plaintiffs were buyers of stock from defendant's

clients. Plaintiffs sued defendant attorney for fraud, alleging that defendant negligently advised his clients that certain shares could be issued to them as stock dividends and sold to others without SEC registration. Plaintiffs bought the shares of stock, the SEC suspended their exemption and the stock became valueless. The defendant's demurrer was sustained. (*Goodman, supra,* at p. 339.) The defendant's duty of care in advising his client did not extend to plaintiffs with whom his clients dealt at arm's length in the absence of a showing that the advice was foreseeably transmitted to or relied upon by plaintiffs, or that they were intended beneficiaries of a transaction to which the advice pertained. (*Ibid.*)

Similarly, in the case of *Held* v. *Arant, supra,* 67 Cal.App.3d 748, a cross-complaint for equitable indemnity was not allowed against the successor lawyer. The case dealt with the issue of the right of an attorney, sued by his client for professional negligence, to seek indemnity from the successor attorney, hired by his client on the same legal matter subsequent to his discharge. The theory was that the negligence of the second attorney in settling legally defensible claims foreseeably damaged the first attorney, Arant, by exposing him to liability for malpractice and by damaging his professional reputation. The court sustained the demurrer and dismissed the cross-complaint. (*Id.* at pp. 750-751.) The court held that a lawyer's duty of care extends only to the intended beneficiaries of his actions. Arant, the original lawyer, was not an intended beneficiary of the successor lawyer in his representation of Held, therefore, he was not entitled to indemnity. (*Id.* at p. 751.) In addition, policy considerations precluded the application of implied indemnity. (*Id.* at pp. 752-753.)

*Gibson, Dunn & Crutcher* v. *Superior Court, supra,* 94 Cal.App.3d 347, is a case with a similar fact situation. Attorney II was hired to extricate the client from a situation created by the alleged negligence of attorney I. (At p. 349.) The cross-complaint was held to be impermissible notwithstanding the decision of our Supreme Court in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, holding that the system of comparative negligence established in *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, in appropriate cases, permits a negligent tortfeasor to cross-complain for total or partial indemnity against an alleged joint tortfeasor. The court held that the prohibition of a cross-complaint by attorney I was based upon the rationale that where the successor lawyer is called upon to exercise a choice between alternative remedies, he must be unfettered from fear of suit by potential adversaries so that he may exercise his best professional judgment and allow his client the benefit of his undivided loyalty. (*Gibson, Dunn & Crutcher, supra,* at pp. 351-356.)

In the case of *Munoz* v. *Davis, supra,* 141 Cal.App.3d 420, the court held that a driver whose negligence resulted in personal injuries to the plaintiff

was liable to the plaintiff for those injuries, but was not liable to indemnify the plaintiff for a subsequent injury to plaintiff caused by the malpractice of plaintiff's attorney in failing to file a personal injury action within the period of the statute of limitations. The driver and the attorney were not jointly and severally liable for the same injury to plaintiff. (At pp. 425-430.)

In *California State Auto. Assn. Inter-Ins. Bureau* v. *Bales, supra,* 221 Cal.App.3d 227, a case not involving successor attorneys, the court held that an insurer who is sued by a third party claimant for a bad faith delay in processing a claim may not obtain equitable indemnity on a theory of negligence from the claimant's former attorney because of the public policy exception to the general rule of equitable indemnity which favors preserving the undivided loyalty of an attorney to his client. (At pp. 228-229.)

██ Each of these cases, except the last, addresses the issue of whether an attorney who is sued for malpractice by a former client may cross-complain for equitable indemnity against a successor attorney who has been hired to extricate the client from the condition created by the predecessor attorney. The cases hold that for sound public policy reasons, such cross-complaints are prohibited. Those policy reasons were clearly expounded in the dissenting opinion of Justice Morris in *Parker* v. *Morton, supra,* 117 Cal.App.3d 751. Justice Morris pointed out that recent cases had uniformly held, for those sound policy reasons, that such a suit is impermissible. The first attorney should have no right of indemnity from the second because: "(1) the threat of such a lawsuit by a client's adversary impinges upon the individual loyalty of the second attorney in advising his client [citation]; (2) one consequence of such a cross-complaint is to preclude the second attorney from trying the lawsuit, thus depriving the party of the attorney of his choice [citation]; (3) the threat of such a cross-complaint results in the injection of undesirable self-protective reservations into the attorney's counselling role, thereby diminishing the quality of legal services received by the client [citation]; and (4) such lawsuits jeopardize the policy of encouraging confidence and preserving inviolate the attorney-client relationship [citation]." (*Id.* at pp. 767-768.) Justice Morris's statement that "[t]he threat to the attorney-client relationship posed by the filing of cross-complaints against plaintiffs' counsel can be avoided only if the rule is applied to preclude the filing of such cross-complaints" seems to us an insight that should be applied in this case. (*Id.* at p. 768.)

3. *The Case Before the Bench*

██ This case, as we have observed, does not raise the issue of whether a lawyer sued for malpractice may seek indemnity from a successor lawyer

who represented the same client on the same claim, and where it is contended that the conduct of the successor lawyer contributed to the client's damages. In this case, Diemer is not a subsequent tortfeasor attorney. If Diemer was negligent at all, his negligence was concurrent with that of Major Clients since they were both hired to, and did, in varying degree not disclosed by the record, negotiate the contract with Lorimar. Major Clients' reliance upon the case of *Parker* v. *Morton, supra,* 117 Cal.App.3d 751 where the court took a position which deviates from the general rule, holding that a lawyer *could* assert a cause of action for indemnity against a successor lawyer is, accordingly, misplaced.

■ "[T]he ordinary rules of implied equitable indemnity in tort do not apply when the claim for indemnity is made against an attorney, is based on a breach of the attorney's duty to his or her client, and is brought by an adverse party in litigation which is the same as or related to that in which the alleged negligence took place. [Citations.] Perceiving that attorneys would be reluctant to accept cases that might result in indemnity claims, and, more significantly, that if faced with a potential indemnity claim, the attorney's sense of self-preservation might impinge on his or her duty of undivided loyalty to the client, these cases have established an exception to the ordinary rule of equitable indemnity. [Citation.]" (*California State Auto. Assn. Inter-Ins. Bureau* v. *Bales, supra,* 221 Cal.App.3d at p. 230.) ■ The considerations which applied in those cases dictate the application of the exception here.

*Concurrent Negligence*

Diemer and Major Clients having negotiated the contract concurrently are, to the extent that there was a breach of their duty of diligent representation on behalf of their client, concurrent tortfeasors. Although Weston, who acted on behalf of Major Clients, is an attorney, the record does not reflect that he acted in the capacity of an attorney. As a matter of fact the record does not disclose that he acted at all. The entity that engaged in the negotiations was Major Clients, which entity is not a lawyer. Accordingly, the successor attorney malpractice cases relied upon by Major Clients and Diemer are not directly relevant. The rules which are applicable to concurrent tortfeasors are applicable. "The imposition of a duty of professional care toward third persons generally has been limited to those situations wherein the nonclient was an intended beneficiary of the attorney's services to the client, or where the foreseeability of harm to the nonclient as a consequence of professional negligence was not outweighed by other policy considerations. . . . [¶] It has been held, however, that an attorney has no duty to protect the interests of an adverse party [citations] . . . . Reasoning that the adverse party is not

the intended beneficiary of an attorney's services, and that the attorney's undivided loyalty belongs to the client, these decisions also refuse to impose a duty where to do so would impermissibly intrude upon the attorney-client relationship. [Citations.]" (*Schick* v. *Lerner* (1987) 193 Cal.App.3d 1321, 1330 [238 Cal.Rptr. 902].)

In our review, we must accept the allegations of the pleadings as true. Properly pleaded factual allegations are deemed admitted for the purposes of a demurrer. (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076-1077 [195 Cal.Rptr. 576].) The first amended complaint alleges that Major Clients was hired by Franklin to represent Franklin in the type of contract being negotiated with Lorimar. The pleading does not allege that Major Clients engaged Diemer as its attorney or that it had in any manner established an attorney-client relationship with Diemer. The pleading states only that Diemer's legal advice was proffered "with the understanding and intention that Franklin and Major would rely upon and act on such advice." Moreover, the pleading alleges as damages "sums to which Major Clients may be required to pay to Franklin in connection with [Franklin's] Cross-Claim . . ." and attorney's fees and costs. This language is insufficient to assert that Major Clients has suffered a pecuniary loss by way of payment of a judgment or settlement for alleged negligent conduct. (*Christian* v. *County of Los Angeles, supra,* 176 Cal.App.3d at p. 471.) Inasmuch as the basis for the remedy of equitable indemnity is restitution, a pleading is fatally defective if there is an absence of an allegation that Major Clients has discharged a liability that should be the responsibility of Diemer to pay. (See *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 108-109 [32 Cal.Rptr.2d 263, 876 P.2d 1062].)

The basis of an action for equitable indemnity is a joint legal obligation to another for damages. (*Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital, supra,* 8 Cal.4th at p. 114.) As we previously stated, "there can be no indemnity without liability" (*Munoz* v. *Davis, supra,* 141 Cal.App.3d at p. 425), meaning that if the record does not establish that a defendant is a concurrent tortfeasor responsible in some measure for the injuries suffered by the plaintiff, that defendant is not subject to a claim for indemnity by another defendant. (*Frank* v. *State of California* (1988) 205 Cal.App.3d 488, 494 [252 Cal.Rptr. 410].) In this case, Major Clients' claim for equitable indemnity is lacking the essential element of concurrent liability to plaintiff Franklin.

Moreover, indemnification is not automatically available to a tortfeasor who, with another, injures the same plaintiff. Courts are obligated to make

an evaluation of the case to determine if the application of the remedy is appropriate. (*Woodward-Gizienski & Associates* v. *Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 67 [255 Cal.Rptr. 800]). In this case, we hold that indemnity would be inappropriate. Major Clients was an entity ostensibly expert in the type of negotiations in which it engaged and the negotiations were carried out by a Major Clients representative who was an attorney. We hold that the rationale expressed in the successor attorney malpractice cases have application here and, under any circumstance would render the application of indemnity inappropriate.

■ "An attorney generally will not be held liable to a third person not in privity of contract with him since he owes no duty to anyone other than his client. The question of whether an attorney may, under certain circumstances, owe a duty to some third party is essentially one of law and, as such, involves 'a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citation.]' (*Goodman* v. *Kennedy*[, *supra*,] 18 Cal.3d [at p.] 342 . . . .)" (*Schick* v. *Lerner, supra,* 193 Cal.App.3d at p. 1329.)

■ To state a cause of action for equitable indemnity, Major Clients' complaint must allege that: (1) Major Clients and Diemer's concurrent fault contributed as a cause of economic damages to the injured party, Franklin; (2) Major Clients has become liable to pay economic damages to the injured party, Franklin; (3) Major Clients is entitled to an award against Diemer for an amount of such damages in excess of Major Clients' proportionate fault. (BAJI No. 12.69.) The second and third requirements are lacking in that there is no allegation by Major Clients that it has suffered any loss by virtue of any legal obligation to pay Franklin. The record reflects that Franklin and Lorimar entered into a settlement agreement. The terms of the settlement agreement are, however, not to be found in this record. Major Clients does not direct us to any settlement agreement, judgment, or order obligating Major Clients to pay any sum to Franklin. Absent this prerequisite, Major Clients cannot state a viable cause of action against Diemer for equitable indemnity.

Where there is no legal duty, the issue of professional negligence cannot be pled because with the absence of a breach of duty, an essential element of the cause of action for professional negligence is missing. (*Goldberg* v. *Frye* (1990) 217 Cal.App.3d 1258, 1267 [266 Cal.Rptr. 483].)

In summation, applying to this case the principles we have outlined, we hold that the judgment of the trial court was correct because Major Clients

had no attorney-client relationship with Diemer, was not an intended beneficiary of the legal services that were rendered by Diemer to his client, and was a potential adverse party on the issue of commission obligations by Diemer's client to Major Clients. Even if it was foreseeable to Diemer that his advice to his client might have possible adverse effects on the interests of Major Clients, such is not sufficient reason to override public policy considerations and impose tort liability (See, e.g., *Skarbrevik* v. *Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692 [282 Cal.Rptr. 627].)

We hold that the ordinary rules of equitable indemnity apply here. Moreover, considerations of public policy buttress the principle that an attorney's duty of loyalty to his client should not be diminished by imputing to him legal obligations to the client's other advisors, be they attorneys or acting in some other capacity, unless such parties are clearly intended beneficiaries of the legal services being rendered. (See, e.g., *Holland* v. *Thacher, supra,* 199 Cal.App.3d at pp. 929-935, which discusses public policy considerations.)

### 4. *The Issue of Leave to Amend*

We consider finally whether Major Clients should be provided an opportunity to amend their pleadings, if they are able so to do, to allege facts sufficient to cure the defects in their previous attempts to state a cause of action. "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. (Code Civ. Proc., § 472c; *E. L. White, Inc.* v. *City of Huntington Beach*[, *supra,*] 21 Cal.3d 497 . . . .) . . . The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) ▆ We conclude that the trial court did not abuse its discretion in dismissing the complaint without leave to amend. The record in this case shows that Major Clients has not met its burden in this case. It merely stated in its opposition to Diemer's demurrer that "if the Court finds the operative complaint deficient, Plaintiff respectfully requests leave to amend to bring that pleading within the purview of *Parker* v. *Morton* and *Home Budget Loans.*" The brief presented to this court suffers from the same debility in that it fails to make an offer to allege facts which would establish a cause of action. The trial court ruled correctly.

In view of our disposition, it is unnecessary that we address the issue of the statute of limitations.

## DISPOSITION

Since appellant cannot state a viable cause of action against respondent for equitable indemnity, the trial court's ruling was correct. We affirm.

Spencer, P. J., and Ortega, J., concurred.