[No. B139451. Second Dist., Div. One. July 28, 2000.]

JOHN SHAFFERY, Cross-complainant and Appellant, v.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP,
Cross-defendant and Respondent.

**COUNSEL**

Hollins & Fields and Howard M. Fields for Cross-complainant and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker and Jonathon Sher for Cross-defendant and Respondent.

**OPINION**

**VOGEL (Miriam A.), J.**—To the chorus of cases decreeing that a lawyer sued by a former client for professional negligence cannot seek indemnity from the lawyer subsequently retained by the client on the same matter, we add a variation on a familiar refrain: When a lawyer whose fees were paid by his client's insurer is sued by the insurer for malpractice, the lawyer may not seek indemnity from the lawyers retained by the insurer to "monitor" the same case.

### FACTS

An employee sued his employer, J&J Snack Foods Corp., for sexual harassment. J&J, as the insured under a $1 million employment practices

liability policy issued by Lexington Insurance Company, had coverage for sexual harassment claims. J&J retained John Shaffery (and others included in our subsequent references to Shaffery) to defend the harassment case and paid Shaffery's fees until the deductible amount of the Lexington policy was satisfied, then tendered defense of the case to Lexington. Lexington agreed to defend J&J and entered an agreement with Shaffery for his continued representation of J&J. Lexington also hired the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP (WEMED) to act as "monitoring counsel" for the harassment case (the fine points of the relationship between Lexington and WEMED have yet to be resolved).

There were pretrial settlement discussions. The employee demanded $400,000. The case did not settle (the fine points about the amount offered on behalf of J&J have yet to be resolved) and the case went to trial (with Shaffery representing J&J). The employee won (a jury gave him $5 million). J&J fired Shaffery and retained a new lawyer who settled the harassment case for about $2.75 million. J&J then sued Lexington, alleging a bad faith refusal to settle for less than the policy's $1 million limits. The parties settled, with Lexington paying about $2.9 million to J&J.

█ Lexington then sued Shaffery for legal malpractice, alleging that Shaffery had been negligent in the manner in which he defended the harassment case. Shaffery answered and later cross-complained against WEMED for indemnity. Shaffery alleges that, assuming his negligence contributed to J&J's loss in the harassment case, so too did WEMED's negligence in failing to oversee the work done by Shaffery. WEMED demurred, contending that, for public policy reasons, Shaffery could not sue WEMED. Over Shaffery's opposition, the demurrer was sustained without leave to amend. Shaffery appeals.

## DISCUSSION

Shaffery contends his claims against WEMED are not barred by the policy considerations barring a lawyer's lawsuit against predecessor counsel. We disagree.

### A.

In *Goodman v. Kennedy* (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737], a lawyer who had represented a corporation was sued for malpractice by plaintiffs who had purchased stock in the corporation. Our Supreme Court held that the lawyer's duty of care to his client, the corporation, did not extend to the plaintiffs, who were not clients and who dealt at

arm's length with the corporation. (*Id.* at pp. 342-345.) As the court put it, "[t]o make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation . . . with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client." (*Id.* at p. 344.)

In *Held v. Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422], a lawyer who was sued by his former client cross-complained against the lawyer who had replaced him, alleging a claim of traditional indemnity based on the successor lawyer's resolution of the client's matter in a manner that damaged the predecessor lawyer. We held that a lawyer sued for professional negligence does not have the right to seek indemnity from "another lawyer subsequently retained by the suing client in the same matter on the theory that the second lawyer's negligence enhanced rather than reduced the initial loss." (*Id.* at p. 750.)

In *Commercial Standard Title Co. v. Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393], the plaintiff sued two title insurance companies, alleging a negligent issuance of the lot book guarantee on which the plaintiff had relied when he entered an agreement for the exchange of real property. The title companies cross-complained against the attorney who had represented the plaintiff in the exchange transaction, alleging a right to indemnity. Division One of the Fourth District rejected a claim that the decision in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], compelled a different result than the one we had reached in *Held v. Arant, supra,* 67 Cal.App.3d 748, concluding that *American Motorcycle* did not "purport to make a rule for all seasons." (*Commercial Standard Title Co. v. Superior Court, supra,* 92 Cal.App.3d at p. 940.)[1]

In *Gibson, Dunn & Crutcher v. Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326], a lawyer who was sued by his former client cross-complained against the lawyer who had replaced him, alleging a claim of

---

[1]*American Motorcycle* held that the principle of comparative negligence adopted in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], applies equally to the allocation of responsibility between two or more negligent defendants, which means that, under "the common law equitable indemnity doctrine[,] a concurrent tortfeasor may obtain partial indemnity from cotortfeasors on a comparative fault basis." (*American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d at p. 608.)

equitable indemnity based on the successor lawyer's failure to extricate the client from the situation created by the predecessor lawyer. Division Four of our court, writing before the decision in *Commercial Standard* was final and therefore not relying on it, reached the same result as *Commercial Standard.* (*Gibson, Dunn & Crutcher v. Superior Court, supra,* 94 Cal.App.3d at pp. 351-352.)

In *Rowell v. TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679], a disability insurer sued by its insured for bad faith unsuccessfully sought leave to file a cross-complaint for indemnity against the lawyer who had represented the insured when he made his claim for disability benefits. The insurer claimed the lawyer's delay in pursuing the claim was both a contributing cause to the insured's original damage and also an exacerbation of the damage caused by the carrier's own delay. We rejected both theories, explaining that "reasons of policy preclude a lawyer's liability by way of cross-complaint for indemnity for damage to his own client in the course of action against the cross-complaining adversary. The potential of conflict between the client's best interest and the course which the lawyer must take to minimize his own exposure to a cross-complaint from the adversary is untenable in view of the lawyer's duty of undivided loyalty to his client." (*Id.* at p. 821.)

In *Parker v. Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197], a lawyer who was sued by his former client cross-complained against the lawyer who had replaced him, alleging that the successor lawyer had exacerbated the client's damages. Division Two of the Fourth District departed from the rules announced in the earlier cases and allowed the cross-complaint to go forward, distinguishing this case on the ground that there was "no choice to be made by the second attorney between alternative remedies" and, therefore, no possibility of a divided loyalty. (*Id.* at p. 761.) *Parker*'s discordant note stands alone, distinguished, criticized or rejected by every court that has bothered to mention it.

In *Goldfisher v. Superior Court* (1982) 133 Cal.App.3d 12 [183 Cal.Rptr. 609], Division Two of our court agreed that a successor lawyer cannot sue his predecessor for indemnity, refusing to adopt a rule that would "encourage claims of indemnification where two lawyers successively represented the same client . . . . Differences between lawyer and client respecting malpractice should be limited to themselves. The facts which generally germinate the relief sought at bench are pregnant with the seed of exacerbated conflict. The inevitable consequence is a corrosion of the sacred attributes of complete confidentiality and undivided loyalty which are the heart of the relationship between lawyer and client." (*Id.* at p. 22.)

In *Munoz v. Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400], the client, who had been injured in an auto accident, retained a lawyer to sue the other driver, then sued the lawyer for malpractice when he failed to file a timely complaint against the driver. The lawyer, in turn, cross-complained against the driver for indemnity. Division Seven of our court affirmed an order dismissing the cross-complaint, explaining that the lawyer's malpractice caused an injury distinct from the injury caused by the driver and that, therefore, they were not jointly and severally liable. (*Id.* at pp. 425-430.)

In *Holland v. Thacher* (1988) 199 Cal.App.3d 924 [245 Cal.Rptr. 247], Division Two of the First District held that a lawyer sued for malpractice by a former client may not cross-complain for equitable indemnity against a successor lawyer hired to extricate the client from the condition created by the predecessor lawyer, noting that this rule "imposes no burden on the predecessor attorney. Through the assertion of an affirmative defense the former attorney is still able to reduce his or her own exposure by the extent of the successor attorney's responsibility for the client's injury. . . . [P]rinciples of agency permit the successor attorney's negligence to be imputed to the client-plaintiff to reduce his or her recovery through application of comparative fault principles." (*Id.* at pp. 926, 929-930; and see *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1198 [246 Cal.Rptr. 629, 753 P.2d 585], for a discussion of Proposition 51, which retained joint and several liability for a plaintiff's economic damages but adopted a rule of several liability for noneconomic damages so that each defendant is liable for only that portion of the plaintiff's noneconomic damages that is commensurate with that defendant's degree of fault for the injury.)

In *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64 [255 Cal.Rptr. 800], the developers of a condominium project settled claims asserted against them by a group of homeowners, then sued the homeowners' soils engineers for equitable indemnity. Division One of the Fourth District affirmed a judgment dismissing the action, explaining: "Equitable indemnification, allowing liability to be apportioned between wrongdoers based on their relative culpability, is premised on fairness. . . . The concern of the doctrine is to avoid the obvious unfairness which results when two negligent persons cause a loss, and one is required to bear the entire burden of the loss while the other is allowed to go 'scot free.' . . . The doctrine is not automatically available, however, for all tortfeasors who injure the same plaintiff; the courts evaluate the circumstances of the case to determine if its application is appropriate." (*Id.* at p. 67, citations omitted.)

In *California State Auto. Assn. Inter-Ins. Bureau v. Bales* (1990) 221 Cal.App.3d 227 [270 Cal.Rptr. 421], an insured sued his insurer for bad faith

and the insurer, in turn, cross-complained against the insured's former lawyer for equitable indemnity. Division Three of the First District affirmed an order dismissing the cross-complaint, explaining that this result does not deprive the insurer of a defense based on the attorney's conduct. "[The insurer] may assert [the lawyer's] negligence as an affirmative defense to liability and has in fact done so . . . ." (*Id.* at p. 231.)

In *Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116 [79 Cal.Rptr.2d 613], a writer-producer, represented by both his agent and his lawyer, negotiated a contract with a television company. For a one-year period, the agent was entitled to a commission on the money earned by the client under the contract. Before expiration of the one-year period, the television company terminated the writer. The client sued the television company, then settled the case for less than the full amount due under the contract. The agent then sued the lawyer for indemnity, alleging that the lawyer had failed to adequately protect the client's interests during contract negotiations, which caused a diminution of the agent's commission. We affirmed an order dismissing the action, finding it irrelevant that these parties were not in precisely the same position as the parties in the reported cases. (*Id.* at p. 1124.)

In *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509 [80 Cal.Rptr.2d 94], Division One of the Fourth District held that a successor law firm sued for malpractice by a former client *can* pursue a cross-complaint for equitable indemnity against the predecessor lawyer who had also been sued by the client, explaining that the usual concerns do not arise when "the subsequent attorney seeks equitable indemnity against the former attorney. The former attorney is not subject to any conflict of interest and has no continuing privileged communications or work product to protect." (*Id.* at pp. 1545-1546.)

In *Austin v. Superior Court* (1999) 72 Cal.App.4th 1126 [85 Cal.Rptr.2d 644], Division Three of the Fourth District held that a lawyer sued for malpractice by his former client may not cross-complain against the client's present lawyer for indemnity. (*Austin v. Superior Court, supra,* 72 Cal.App.4th at p. 1129.)

## B.

In *Kroll & Tract v. Paris & Paris* (1999) 72 Cal.App.4th 1537 [86 Cal.Rptr.2d 78], a company sued for the sale of a defective product was represented by independently retained counsel (Paris & Paris) and by a law firm retained by the company's insurer subject to a reservation of rights

(Kroll & Tract). Both law firms actively participated in the defense of the company until 10 days before trial, at which point Paris & Paris asked Kroll & Tract to take full responsibility. The company lost at trial and thereafter sued Kroll & Tract (but not Paris & Paris) for malpractice. Kroll & Tract cross-complained against Paris & Paris for equitable indemnity. Division Three of the Fourth District affirmed an order dismissing the cross-complaint, explaining the rules this way:

"In *American Motorcycle* . . . , the Supreme Court enunciated the principle that '. . . liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor "in direct proportion to [his] respective fault." ' . . . However, a well-recognized exception to the ordinary rules of implied equitable indemnity has been established: A cross-complaint will not be permitted where an attorney sued for malpractice by a former client seeks indemnification from a successor attorney hired by the client to extricate him or her from the situation allegedly caused by the first attorney. . . .

"The various public policy reasons supporting this exception have been pointed out in several cases: 'Among them are: (1) the threat of such a lawsuit by a client's adversary impinges upon the individual loyalty of the second attorney in advising his client . . . ; (2) one consequence of such a cross-complaint is to preclude the second attorney from trying the lawsuit, thus depriving the party of the attorney of his choice . . . ; (3) the threat of such a cross-complaint results in the injection of undesirable self-protective reservations into the [second] attorney's counseling role, thereby diminishing the quality of legal services received by the client . . . ; and (4) such lawsuits jeopardize the policy of encouraging confidence and preserving inviolate the attorney-client relationship . . . .' . . . ." (*Kroll & Tract v. Paris & Paris, supra,* 72 Cal.App.4th at pp. 1541-1542, citations omitted.)

Kroll & Tract contended that the policy reasons that preclude the first lawyer from cross-complaining against the successor lawyer are not present where two lawyers shared responsibility in the underlying action in which the client claims the malpractice occurred, and where neither of those lawyers is representing the client in the malpractice action. The court disagreed, explaining that "the issues of undivided loyalty, self-protective tendencies, and the preservation of the attorney-client privilege remain under these circumstances. Even though Kroll & Tract and Paris & Paris shared the common goal of defending [the company] in the underlying lawsuit, they filled separate roles. Kroll & Tract was hired by [the company's] insurer, who provided it with a defense under a reservation of rights. Paris & Paris,

who began the defense as [the company's] personal counsel, remained in the case as *Cumis* counsel.

"In the usual tripartite insurer-attorney-insured relationship, the insurer has a duty to defend the insured, and hires counsel to provide the defense. 'So long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured.' . . . The insurance defense attorney is placed in a position of conflict, however, when issues of coverage are asserted by the insurer through a reservation of rights. Addressing this problem, the court in *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* [(1984)] 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913], held that an insurance company must pay for independent counsel for its insured when there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights to deny coverage under an insurance policy. This holding was codified in Civil Code section 2860 in 1987.

"The *Cumis* doctrine requires 'complete independence of counsel' . . . , who represents 'solely the insured' . . . . 'Since it is almost unavoidable that, in the course of investigating and preparing the insured's defense to the third party's action, the insured's attorney will come across information relevant to a coverage or similar issue, it is quite difficult for an attorney beholden to the insurer to represent the insured where the insurer is reserving its rights regarding coverage . . . .' . . . ." (*Kroll & Tract v. Paris & Paris, supra,* 72 Cal.App.4th at pp. 1542-1543, citations omitted.)

The court rejected the contention that, because Paris & Paris no longer represented the company, the *Cumis* considerations no longer applied, explaining that the dangers of divided loyalty and self-protective tendencies can continue. "The possibility that the interests of the insured may become adverse to those of the insurer, and thus to those of the insurer's attorney, is exactly the reason *Cumis* counsel exists." (*Kroll & Tract v. Paris & Paris, supra,* 72 Cal.App.4th at p. 1543.) Indeed, said the court, the "threat of an adversarial relationship (and the concomitant conflict between the attorney's duty to the client and his or her self-protective instincts) is a significant factor when considering the applicability of the indemnity prohibition in diverse factual situations, more significant than the chronological relationship of the parties. In *Major Clients Agency* [where the client's agent tried to sue the client's lawyer for indemnity, the] court sustained the attorney's demurrer to the complaint, finding the same public policy considerations present in the subsequent attorney malpractice cases were applicable to the

*concurrent* representation because the agent 'was a potential adverse party on the issue of commission obligations by [the] client to [the agent].' . . .

"In contrast, the court in *Crouse* . . . allowed an indemnity cross-complaint by an attorney-malpractice defendant against the dissatisfied client's *former* attorney. The court found, '[T]he former attorney is not subject to any conflict of interest and has no continuing privileged communications or work product to protect' and held, '[T]he policy reasons prohibiting an indemnity claim by the original tortfeasor attorney against the subsequent attorney are not applicable to an indemnity claim by the subsequent attorney against the former attorney.' . . .

"We are not prepared to agree with the *Crouse* court's sweeping statement for all purposes. But the particular facts in *Crouse* showed there were no conflicting duties during the former attorney's representation of the dissatisfied client; thus, the court's result was correct. Likewise, although we agree with the holding in *Major Clients,* we do not suggest that a cross-complaint for indemnity would never be allowed against an attorney involved in the concurrent representation of a joint client." (*Kroll & Tract v. Paris & Paris, supra,* 72 Cal.App.4th at p. 1544, fn. 4, citations omitted.)

The court "joined the chorus," concluded that *Parker v. Morton* was erroneously decided, and observed that, "[e]ven without the indemnity cross-complaint, Kroll & Tract can show the negligence of Paris & Paris was the cause of [the company's] injury through the affirmative defense of comparative negligence, thereby reducing any liability it may have. . . . The affirmative defense has less impact on the public policy considerations that militate against the cross-complaint. 'The possibility of a cross-complaint against plaintiff's counsel interferes with the attorney-client relationship much more insidiously than the prospect of an imputed negligence defense. . . . [I]t is th[e] personal exposure of counsel [as a cross-defendant] that " 'would inject undesirable self-protective reservations into the attorney's counseling role' and tend to divert the attorney from single-minded devotion to his client's interests." . . .' " (*Kroll & Tract v. Paris & Paris, supra,* 72 Cal.App.4th at p. 1545, citation omitted.)

## C.

In *Kroll & Tract,* the client was represented by both Paris & Paris and Kroll & Tract, with the latter firm assuming the lead at trial. In our case, Shaffery alone represented J&J at trial, with WEMED as "monitoring counsel." In *Kroll & Tract,* both firms were paid by the insurer. In our case, Shaffery and WEMED were both paid by Lexington. In *Kroll & Tract,*

the client sued the lawyers retained by the insurer, Kroll & Tract. In our case, the client's insurer (Lexington) sued the client's personal lawyer, Shaffery. In *Kroll & Tract,* the lawyers paid by the insurer cross-complained against the client's personal lawyers, Paris & Paris. In our case, the client's personal lawyer (Shaffery) cross-complained against "monitoring counsel" (WEMED). As we explained in *Major Clients Agency v. Diemer, supra,* 67 Cal.App.4th at page 1124, it is immaterial that, from one case to the next, the parties are not in precisely the same position as the parties in the other reported decisions. In substance if not in form, we find the case before us analytically indistinguishable from *Kroll & Tract v. Paris & Paris, supra,* 72 Cal.App.4th 1537, and conclude the result must be the same.

If WEMED was not representing J&J at all and was only monitoring the harassment case for Lexington, then WEMED cannot be sued for indemnity by Shaffery. (*Goodman v. Kennedy, supra,* 18 Cal.3d 335; *Commercial Standard Title Co. v. Superior Court, supra,* 92 Cal.App.3d 934; *California State Auto. Assn. Inter-Ins. Bureau v. Bales, supra,* 221 Cal.App.3d 227; *Major Clients Agency v. Diemer, supra,* 67 Cal.App.4th 1116.) If WEMED was in some ephemeral fashion "representing" J&J as well as Lexington, that tripartite relationship cannot support a claim for indemnity for the same reasons that a successor lawyer cannot seek indemnity from a predecessor lawyer. (*Rowell v. TransPacific Life Ins. Co., supra,* 94 Cal.App.3d 818; *Munoz v. Davis, supra,* 141 Cal.App.3d 420; *Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc., supra,* 208 Cal.App.3d 64; *California State Auto. Assn. Inter-Ins. Bureau v. Bales, supra,* 221 Cal.App.3d 227.) Either way, Shaffery cannot obtain indemnity from WEMED.[2]

## DISPOSITION

The judgment is affirmed. Wilson, Elser, Moskowitz, Edelman and Dicker LLP is awarded its costs.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied August 21, 2000, and appellant's petition for review by the Supreme Court was denied November 1, 2000.

---

[2]This opinion, our fourth, means we now have the lead for the number of published opinions on this issue. Division One of the Fourth District is second with three published opinions. Division Three of the Fourth District is third with two published opinions. Divisions Two, Four and Seven of our District, Division Two of the Fourth District, and Divisions Two and Three of the First District, are all tied for fourth place with one opinion each. We like to keep track of these things.