86 Cal.Rptr.2d 78 (1999)
72 Cal.App.4th 1537
KROLL & TRACT et al., Cross-complainants and Appellants,
v.
PARIS & PARIS et al., Cross-defendants and Respondents.
No. G019790.
Court of Appeal, Fourth District, Division Three.
June 24, 1999.
*80 Barton, Klugman & Oetting and Charles J. Schufreider, Los Angeles, for Cross-complainants and Appellants.
Wilner, Klein & Siegel, Edward E. Wallace and Patrick M. Malone, Beverly Hills, for Cross-defendants and Respondents.

OPINION
SILLS, P.J.
Sound policy reasons prohibit an attorney sued for malpractice by a former client from cross-complaining for indemnity against the client's successor attorney. Here, we are asked to decide whether these same concerns should bar an indemnity cross-complaint between two independent attorneys who concurrently represented the dissatisfied client, one as insurance defense counsel and one as Cumis[1] counsel, where the client subsequently sued only one of the attorneys. We hold that public policy considerations preclude such a cross-complaint for indemnity and affirm the trial court's order sustaining the demurrer without leave to amend.

FACTS
Charles Giguere and his company, San Jose Crane & Rigging, Inc. (collectively, San Jose Crane) were sued by the purchasers of an allegedly defective crane. San Jose Crane's personal counsel, Paris & Paris, filed a demurrer to the complaint; the defense was then tendered to the company's liability insurer. Kroll & Tract was retained by the insurer to provide a defense under a full reservation of rights, and it associated as counsel with Paris & Paris. Five months later, Paris & Paris filed a cross-complaint on behalf of San Jose Crane against the purchasers, seeking recovery of the unpaid portion of the crane's purchase price. Kroll & Tract was not involved with the prosecution of the cross-complaint.
Both firms actively participated in the defense of San Jose Crane until 10 days before trial, when Paris & Paris asked Kroll & Tract to take on the full defense. San Jose Crane lost the lawsuit and sued Kroll & Tract[2] for legal malpractice, alleging that the firm mishandled the defense. The company did not name its personal counsel, Paris & Paris, as a defendant in the malpractice action.
Kroll & Tract cross-complained against Paris & Paris[3] for comparative equitable indemnity. Paris & Paris successfully demurred on the grounds that public policy considerations bar the requested relief. The demurrer to the first amended crosscomplaint was sustained on the same grounds without leave to amend, and judgment for Paris & Paris was entered. Kroll & Tract appeal.

*81 DISCUSSION
On an appeal following a demurrer sustained without leave to amend, the appellant bears the burden of demonstrating either (1) the demurrer was sustained erroneously as a matter of law on the facts pleaded, or (2) the court abused its discretion by failing to grant leave to amend. (Lewis v. Purvin (1989) 208 Cal.App.3d 1208, 1213, 256 Cal.Rptr. 827; Pollack v. Lytle (1981) 120 Cal.App.3d 931, 939, 175 Cal.Rptr. 81.) Kroll & Tract has failed to carry either burden.
In American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899, the Supreme Court enunciated the principle that "liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor `in direct proportion to [his] respective fault.'" (Id. at p. 598, 146 Cal.Rptr. 182, 578 P.2d 899.) However, a well-recognized exception to the ordinary rules of implied equitable indemnity has been established: A cross-complaint will not be permitted where an attorney sued for malpractice by a former client seeks indemnification from a successor attorney hired by the client to extricate him or her from the situation allegedly caused by the first attorney. (Holland v. Thacher (1988) 199 Cal.App.3d 924, 245 Cal.Rptr. 247; Copenbarger v. International Ins. Co. (1996) 46 Cal.App.4th 961, 54 Cal.Rptr.2d 1; but see Parker v. Morton (1981) 117 Cal.App.3d 751, 173 Cal.Rptr. 197.)
The various public policy reasons supporting this exception have been pointed out in several cases: "Among them are: (1) the threat of such a lawsuit by a client's adversary impinges upon the individual loyalty of the second attorney in advising his client (Held v. Arant (1977) 67 Cal. App.3d 748, 752, 134 Cal.Rptr. 422); (2) one consequence of such a cross-complaint is to preclude the second attorney from trying the lawsuit, thus depriving the party of the attorney of his choice (Gibson, Dunn & Crutcher v. Superior Court (1979) 94 Cal.App.3d 347, 352, 156 Cal.Rptr. 326); (3) the threat of such a cross-complaint results in the injection of undesirable selfprotective reservations into the [second] attorney's counseling role, thereby diminishing the quality of legal services received by the client (see Goodman v. Kennedy (1976) 18 Cal.3d 335, 344, 134 Cal.Rptr. 375, 556 P.2d 737); and (4) such lawsuits jeopardize the policy of encouraging confidence and preserving inviolate the attorney-client relationship (Commercial Standard Title Co. v. Superior Court (1979) 92 Cal.App.3d 934, 944-945, 155 Cal.Rptr. 393)." (Parker v. Morton, supra, 117 Cal. App.3d at pp. 767-768, 173 Cal.Rptr. 197 [dis. opn. of Morris, J.].)
Kroll & Tract argues the policy reasons to preclude an indemnity crosscomplaint in the successor attorney situation are not present here; both it and Paris & Paris shared San Jose Crane's defense, and Paris & Paris is not representing San Jose Crane in the malpractice action against Kroll & Tract. But the issues of undivided loyalty, self-protective tendencies, and the preservation of the attorney-client privilege remain under these circumstances. Even though Kroll & Tract and Paris & Paris shared the common goal of defending San Jose Crane in the underlying lawsuit, they filled separate roles. Kroll & Tract was hired by San Jose Crane's insurer, who provided it with a defense under a reservation of rights. Paris & Paris, who began the defense as San Jose Crane's personal counsel, remained in the case as Cumis counsel.
In the usual tripartite insurer-attorney-insured relationship, the insurer has a duty to defend the insured, and hires counsel to provide the defense. "So long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured." (National Union Fire Ins. Co. v. Stites Prof. Law Corp. (1991) 235 Cal.App.3d 1718, 1727, 1 Cal. *82 Rptr.2d 570.) The insurance defense attorney is placed in a position of conflict, however, when issues of coverage are asserted by the insurer through a reservation of rights. Addressing this problem, the court in San Diego Federal Credit Union v. Cumis Ins. Society, Inc., supra, 162 Cal.App.3d 358, 208 Cal.Rptr. 494, held that an insurance company must pay for independent counsel for its insured when there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights to deny coverage under an insurance policy. This holding was codified in Civil Code section 2860 in 1987.
The Cumis doctrine requires "complete independence of counsel" (State Farm Fire & Casualty Co. v. Superior Court (1989) 216 Cal.App.3d 1222, 1226, 265 Cal.Rptr. 372), who represents "solely the insured" (Employers Ins. of Wausau v. Albert D. Seeno Const. (N.D.Cal.1988) 692 F.Supp. 1150, 1157). "Since it is almost unavoidable that, in the course of investigating and preparing the insured's defense to the third party's action, the insured's attorney will come across information relevant to a coverage or similar issue, it is quite difficult for an attorney beholden to the insurer to represent the insured where the insurer is reserving its rights regarding coverage...." (Assurance Co. of America v. Haven (1995) 32 Cal.App.4th 78, 87, 38 Cal.Rptr.2d 25.)
Kroll & Tract argues that because Paris & Paris no longer represents San Jose Crane, the dangers of divided loyalty and self-protective tendencies do not exist here. (See, e.g., Holland v. Thacher, supra, 199 Cal.App.3d 924, 245 Cal.Rptr. 247.) But these dangers can exist apart from the subsequent attorney situations. In California State Auto. Assn. Inter-Ins. Bureau v. Bales (1990) 221 Cal.App.3d 227, 270 Cal.Rptr. 421, a third party claimant sued the insurer for bad faith delay in processing her claim. The insurer cross-complained against the claimant's attorney who had represented her in the action against the insured, claiming the attorney was partially responsible for the delay. The court refused to allow the cross-complaint, finding that the policy considerations in the subsequent attorney cases were present with a former attorney as well. "Where the attorney represents either a first or third party claimant on an insurance policy, the interest of the client is necessarily adverse to that of the insurer, even though there may not be any underlying action against the insurer. In such situations, there is a possibility that conduct of the insurer may subject it to liability for bad faith. That possibility in turn creates a potential conflict between the attorney's duty to pursue the client's claim vigorously, and the understandable desire to avoid conduct which might later be the basis for the attorney's personal liability in indemnity to the insurer.... This is the evil which the general rule against such actions is designed to prevent." (Id. at p. 231, 270 Cal.Rptr. 421.)
The Cumis situation is clearly analogous. The possibility that the interests of the insured may become adverse to those of the insurer, and thus to those of the insurer's attorney, is exactly the reason Cumis counsel exists. (See Rowell v. Transpacific Life Ins. Co. (1979) 94 Cal. App.3d 818, 156 Cal.Rptr. 679.)[4]
*83 Kroll & Tract argues that the fear of revealing client confidences should not bar its cross-complaint; it claims the commencement of the malpractice action as to one attorney should operate as a waiver of the privilege as to both attorneys regarding communications relevant to the joint representation. But that is not the law. The client is the holder of the attorney-client privilege (Evid.Code, § 952), and San Jose Crane expressly preserved the privilege as to Paris & Paris by choosing not to sue it for malpractice. (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 599, 208 Cal.Rptr. 886, 691 P.2d 642.) If the indemnity action were allowed, Paris & Paris would be unable to defend itself to the extent that its actions depended on client communications.
Kroll & Tract claims the client communications relevant to the joint representation could only be instructions or authority from San Jose Crane to Paris & Paris, which are communications excluded from the privilege. (Fleschler v. Strauss (1936) 15 Cal.App.2d 735, 60 P.2d 193.) Fleschler merely stands for the proposition that the privilege does not attach to communications that were not intended to be confidential. (Evid.Code, § 952; Solon v. Lichtenstein (1952) 39 Cal.2d 75, 79, 244 P.2d 907.) We will not speculate on the intent of the client in making communications that are unrevealed to us. The attorney-client privilege is meant to promote a full and free relationship between the attorney and the client by safeguarding disclosures and advice. Where there is doubt about its application, we will construe it liberally. (American Mut. Liab. Ins. Co. v. Superior Court (1974) 38 Cal. App.3d 579, 593, 113 Cal.Rptr. 561.)
Kroll & Tract relies on Pollack v. Lytle, supra, 120 Cal.App.3d 931, 175 Cal.Rptr. 81, where one attorney who was sued by his former client for malpractice was allowed to cross-complain for indemnity against co-counsel. But that case was decided on an agency theory; the first attorney had hired the second to assist him with an expert witness in a medical malpractice case in return for a percentage of the first attorney's contingency fee. Thus, the second attorney had an agent's duty to his principal.
Kroll & Tract also relies on Parker v. Morton, supra, 117 Cal.App.3d 751, 173 Cal.Rptr. 197, which went against the weight of authority and allowed a crosscomplaint for indemnity by the attorney defendant in a malpractice action against the plaintiffs subsequent attorney. The Parker court held the second attorney had no choice to make between alternative avenues of advice to the client because there was only one right thing to do; thus his duty of undivided loyalty to the client was not compromised by the cross-complaint. *84 Parker has been distinguished, criticized or outright rejected by almost every case that discusses it. We "join this chorus and conclude that Parker ... was erroneously decided." (Austin v. Superior Court (1999) 72 Cal.App.4th 1126, 85 Cal.Rptr.2d 644.)
Even without the indemnity cross-complaint, Kroll & Tract can show the negligence of Paris & Paris was the cause of San Jose Crane's injury through the affirmative defense of comparative negligence, thereby reducing any liability it may have. (Lewis v. Purvin, supra, 208 Cal.App.3d 1208, 256 Cal.Rptr. 827.) The affirmative defense has less impact on the public policy considerations that militate against the cross-complaint. "The possibility of a cross-complaint against plaintiffs counsel interferes with the attorney-client relationship much more insidiously than the prospect of an imputed negligence defense.... [I]t is th[e] personal exposure of counsel [as a cross-defendant] that "`would inject undesirable self-protective reservations into the attorney's counseling role' and tend to divert the attorney from single-minded devotion to his client's interests.' [Citation.]" (Holland v. Thacher, supra, 199 Cal.App.3d at p. 933, 245 Cal.Rptr. 247.)
The judgment is affirmed. Respondent is entitled to costs on appeal.
CROSBY, J., and RYLAARSDAM, J., concur.
NOTES
[1] San Diego Federal Credit Union v. Cumis Ins. Society, Inc. (1984) 162 Cal.App.3d 358, 208 Cal.Rptr. 494.
[2] The complaint lists Kroll & Tract and two of the firm's employees, Daniel E. Hoffman and David K. Ng as defendants. They are referred to collectively as Kroll & Tract.
[3] The cross-complaint also lists Jeffrey A. Paris as a cross-defendant.
[4] The threat of an adversarial relationship (and the concomitant conflict between the attorney's duty to the client and his or her self-protective instincts) is a significant factor when considering the applicability of the indemnity prohibition in diverse factual situations, more significant than the chronological relationship of the parties. In Major Clients Agency v. Diemer (1998) 67 Cal.App.4th 1116, 79 Cal.Rptr.2d 613, a television agent for a writer-producer and the writer-producer's attorney concurrently represented their joint client in contract negotiations. The contract included a commission agreement between the client and the agent, and when the contract fell apart before the completion of its term, the agent's commission was substantially reduced. The agent attempted to sue the client's attorney for indemnity, claiming he inadequately conducted the contract negotiations. The court sustained the attorney's demurrer to the complaint, finding the same public policy considerations present in the subsequent attorney malpractice cases were applicable to the concurrent representation because the agent "was a potential adverse party on the issue of commission obligations by [the] client to [the agent]." (Id. at pp. 1132-1133, 79 Cal.Rptr.2d 613.)

In contrast, the court in Crouse v. Brobeck, Phleger & Harrison (1998) 67 Cal.App.4th 1509, 80 Cal.Rptr.2d 94 allowed an indemnity cross-complaint by an attorney-malpractice defendant against the dissatisfied client's former attorney. The court found, "[T]he former attorney is not subject to any conflict of interest and has no continuing privileged communications or work product to protect" and held, "[T]he policy reasons prohibiting an indemnity claim by the original tortfeasor attorney against the subsequent attorney are not applicable to an indemnity claim by the subsequent attorney against the former attorney." (Id. at pp. 1545-1546, 1548, 80 Cal. Rptr.2d 94.)
We are not prepared to agree with the Crouse court's sweeping statement for all purposes. But the particular facts in Crouse showed there were no conflicting duties during the former attorney's representation of the dissatisfied client; thus, the court's result was correct. Likewise, although we agree with the holding in Major Clients, we do not suggest that a cross-complaint for indemnity would never be allowed against an attorney involved in the concurrent representation of a joint client.