[No. D044211. Fourth Dist., Div. One. June 9, 2005.]

FORENSIS GROUP, INC., et al., Cross-complainants and Appellants, v. FRANTZ, TOWNSEND & FOLDENAUER, et al., Cross-defendants and Respondents.

18

COUNSEL

Robinson, DiLando & Whitaker, Michael C. Robinson, Jr., and Mark Kane for Cross-complainant and Appellant Forensis Group, Inc.

Neil, Dymott, Perkins, Brown & Frank, Clark R. Hudson and David P. Burke for Cross-complainant and Appellant Malcolm Robbins.

Butz, Dunn, DeSantis & Bingham, Douglas M. Butz, Roger P. Bingham and Steven C. Uribe for Cross-defendants and Respondents.

**OPINION**

**HUFFMAN, J.**—This appeal presents the issue of whether expert witnesses may seek equitable indemnification by filing cross-complaints against the attorneys who retained them in an underlying case, when the client in the underlying case has sued the expert witnesses for professional negligence, but the client has not sued those attorneys. The subject indemnity cross-complaints arose out of an action for professional malpractice against these defendants and cross-complainants Malcolm Robbins (Robbins) and Forensis Group, Inc. (Forensis; sometimes collectively referred to here as Experts), who acted, respectively, as an expert engineering witness and as an expert

referral firm in the underlying action. This underlying action was an unsuccessful wrongful death/products liability complaint filed on behalf of the decedent's surviving plaintiffs, the Hernandez family (the underlying action), by their then-attorneys, the indemnity cross-defendants, the law firm of Frantz, Townsend & Foldenauer and its attorney, Giles Townsend (referred to here as Law Firm).[1] After the Hernandez plaintiffs suffered an unfavorable summary judgment ruling in the underlying action on their products liability claim, they settled the remaining portion of their action. They did not appeal the summary judgment ruling that was in favor of the manufacturer of the subject product, a forklift.

Represented by new counsel, the Hernandez plaintiffs then brought their malpractice complaint against their retained Experts in the underlying action, Robbins and the referral firm, Forensis, which sent him to Law Firm to be retained on behalf of the Hernandez plaintiffs. However, they did not sue Law Firm for legal malpractice. They claim that Robbins, a member of the forensic engineering profession, was responsible for the loss of their products liability claim, due to his inadequate degree of expertise on the products liability issues, and due to misrepresentations by both experts about his skills.

Once Experts were sued for professional negligence, they brought these cross-complaints against Law Firm for equitable indemnity to apportion the loss incurred when Experts were held liable on, or settled, the professional negligence claims by the Hernandez plaintiffs.

Law Firm brought a motion for summary judgment on public policy grounds, which was granted by the trial court. (Code Civ. Proc., § 437c.) The court ruled that the cross-complaints were barred based upon the public policies protecting attorney-client loyalty and confidential client communications under the particular circumstances presented in this action, due to the nature of the involvement of the Hernandez plaintiffs' previous law firm, the cross-defendants. It was not disputed that Experts had incurred monetary liability through their settlements of the Hernandez plaintiffs' complaint.

Following the grant of summary judgment, Experts brought motions to set aside the judgment on the basis that new facts were obtained suggesting that Law Firm's referral of the Hernandez plaintiffs to new counsel, the Macaluso firm, to bring this action against Experts, was collusive in nature. Experts represented that neither they nor the trial court was made aware that Law Firm and Macaluso had a previous professional relationship which allegedly created a conflict of interest, such that the Hernandez plaintiffs could not have

---

[1] The underlying action was entitled *Hernandez v. Bosa Development Corp., et al.* (Super. Ct. San Diego, 2000, No. GIC 751162.)

received adequate advice when they decided to sue only Experts and not Law Firm for professional negligence. This motion to set aside the judgment was denied.

Experts now appeal both the summary judgment and the denial of the motions to set aside the judgment, contending that public policy supports their claims for equitable indemnity against Law Firm, under all the relevant circumstances, when considered on a case-by-case basis. (*Musser v. Provencher* (2002) 28 Cal.4th 274, 280 [121 Cal.Rptr.2d 373, 48 P.3d 408] (*Musser*).) We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### Underlying Action

As summarized in the pleadings, the facts giving rise to this dispute are as follows. The husband and father of the Hernandez family was tragically killed in a workplace accident when a forklift struck him. The Hernandez family received worker's compensation death benefits and retained Law Firm to bring a products liability action against the manufacturer of the forklift and the rental company.

Through a referral from Forensis, an expert witness clearing house, Robbins, a mechanical engineer, was retained by Law Firm as an expert witness on the products liability claim, which focused on the backup alarm and side mirrors on the forklift. Robbins inspected the vehicle and reviewed documents provided to him by Law Firm, including publications by the Society of Automotive Engineering (SAE) regarding safety alarms on such vehicles. At his deposition, he did not identify any applicable safety standards with respect to the manufacturer's installation of a backup alarm.

The manufacturer of the forklift, Trak International, brought a summary judgment motion contending the forklift was not defective and met all applicable safety standards.

Pursuant to his retention by Law Firm, Robbins prepared a declaration in opposition to the summary judgment motion, stating that the vehicle failed the criteria of a particular SAE safety standard. The trial court ruling made note that this declaration contradicted Robbins's earlier deposition testimony. Accordingly, the trial court in the underlying action granted summary judgment in favor of the manufacturer, ruling in relevant part that Robbins as the Hernandez plaintiffs' expert failed to adequately explain why he was now

claiming a violation of SAE safety standards, when he did not use that standard in performing his tests on the vehicle and when giving deposition testimony.

The Hernandez plaintiffs settled their remaining claim against the rental company. They did not appeal the summary judgment ruling.

B

Expert Malpractice Complaint and Cross-complaint for
Indemnity; Settlements

After the main portion of the Hernandez underlying action was lost on summary judgment, Law Firm referred the Hernandez family to new counsel (the Todd Macaluso firm). Macaluso had represented a principal of Law Firm, James Frantz, in a lawsuit involving his prior law firm. Macaluso was also cocounsel with Law Firm and several other firms on other products liability litigation. He obtained a waiver of conflicts from the Hernandez family as to Law Firm.

On behalf of the Hernandez family, Macaluso then sued Experts (Robbins/ Forensis Group) on professional negligence theories, including causes of action for negligence, negligent misrepresentation, intentional misrepresentation, and breach of fiduciary duty. Hernandez alleged that Robbins failed to exercise the care and skill that a member of the forensic engineering profession should have, thereby losing the underlying action for the Hernandez family and forfeiting their $1.5 million claim. They also claimed both Experts misrepresented the expertise of Robbins. Macaluso wrote a letter to Robbins discouraging him from bringing a cross-complaint against Law Firm.

In response, Experts filed their separate cross-complaints for equitable indemnity. They claim that because they were retained by Law Firm, its professional activities should subject it to sharing in the loss attributable to the unsuccessful opposition to the manufacturer's summary judgment motion in the underlying action. Specifically, they argued Law Firm had waited too late in the action to consult Forensis to obtain a suitable expert, and/or had failed to provide Robbins with sufficient information to allow him to provide adequate services, and had failed to provide Experts with relevant information before and after the hiring. They also argued Law Firm attorneys failed to rehabilitate Robbins at his deposition about the problems regarding the use of the SAE industry standards and had failed to provide the trial court with accurate products liability law in opposing the Trak International summary judgment motion, regarding admissibility or inadmissibility of industry standards evidence.

Demurrers to the cross-complaint on grounds of the bar of public policy were overruled. Discovery began, including the deposition of Experts' legal expert David E. Monahan, whose opinion was that Law Firm may have breached its duty of care to its client and was therefore responsible for losing the motion for summary judgment in the underlying case. Law Firm named a number of expert witnesses to testify on professional standards in the legal malpractice field, the forensic engineering field, and an economic expert regarding the Hernandez family's potential recovery if their action had been successful. However, the trial court granted Law Firm's motion to stay discovery, including depositions of these expert witnesses.

The trial court also issued an order that the complaint and the cross-complaints should be tried separately, to avoid any conflicts of interest through Law Firm's defense of the cross-complaint, by reference to its conduct and communications with the Hernandez clients in the underlying action. The trial court invited Law Firm to file a summary judgment motion to resolve the cross-complaints.

Expert Robbins settled the Hernandez action and obtained dismissal of the complaint with prejudice. (Later, Forensis also settled with the Hernandez plaintiffs, and seeks judicial notice of the dismissal order; this request is granted as noted in fn. 3, *post*.)

C

Summary Judgment Motion and Order

Law Firm brought a motion for summary judgment, seeking a ruling that the cross-complaints were barred as a matter of law because they violate public policy concerns regarding the attorney-client relationship. As noted by the trial court, in support of its summary judgment, Law Firm relied on the deposition of Experts' own legal expert Monahan, stating as Experts' position "that the law firm may have breached its duty of care to its client and was therefore responsible for losing the motion for summary judgment in the underlying case which summary judgment loss is the basis of the lawsuit against Robbins/Forensis." The trial court acknowledged that this evidence presented the question of "whether under the circumstances presented the equitable allocation of damages outweighs the public policy interest in ensuring the undiluted loyalty of a lawyer to his client's interests and/or whether there is a real risk of that conflict."

Experts filed opposition to the summary judgment motion, contending there was no public policy bar because Law Firm could not show how the confidentiality of any attorney-client communications between it and the

Hernandez family would be violated through the defense by Law Firm against such a cross-complaint. Experts also argued there was no ongoing duty of loyalty between Law Firm and its former client, Hernandez, which would prevent Law Firm from defending the cross-complaint. They supported their opposition with deposition testimony from their expert witness, Attorney Monahan, on the alleged breaches of Law Firm's professional duties of care.

The trial court granted Law Firm's motion for summary judgment, explaining its reasoning as follows. The court noted the separate statements of the parties showed there were essentially no disputed material facts (although there were a few minor factual disputes). Accordingly, the issues presented were issues of law. The court framed the issue before it as whether "Robbins and/or Forensis, each a third party, [may] assert a cross-complaint for indemnity against the law firm, which cross-complaint is premised on the law firm's negligence toward its former client if Robbins and/or Forensis can demonstrate that the reason for which they are liable to the law firm's former client was caused solely by the law firm or jointly with the law firm when the former client has sued only Robbins and Forensis and not the law firm."

In issuing its ruling that the cross-complaints should be barred by public policy, the trial court found it significant that Experts were not in privity of contract with nor owed a duty by Law Firm; the indemnity claim at issue is between nonattorney Experts and the attorneys by whom they were hired, each working for the same client. It was undisputed that there was no duty of care flowing from the attorneys to Experts, and that the attorneys and Experts each owed the client a duty of care.

Further, the trial court noted indemnity claims against attorneys by third parties are normally prohibited where such claims violate public policy considerations. (*Musser, supra,* 28 Cal.4th at p. 280.) The trial court stated that the relevant public policy issues required it to consider whether Law Firm would be able to defend against the cross-complaint while: 1) avoiding conflicts of interest between the attorney and the former clients; and 2) protecting the confidentiality of attorney-client communications. The issue was whether the duty of loyalty would prevent Law Firm from presenting a vigorous defense whether or not the client had waived the attorney-client privilege.

Specifically, the court noted: "[L]aw firm has a duty to do nothing in the trial by Hernandez against the Forensis Group that would harm Hernandez' case. Yet defeating or diminishing Hernandez' case is exactly the self-interest the law firm would have, knowing that if Plaintiff recovers, the law firm will have to defend a claim that it should indemnify Robbins and/or Forensis Group from its loss. [¶] Therefore, there is a conflict between the . . . law

firm and their former Hernandez clients no matter what opinion the attorneys at the law firm held concerning the merits of the underlying product defect action."

Further, with respect to liability for indemnity or contribution, the court stated, "Even if they are not permitted to testify as to their opinion of the merits of the Plaintiff's underlying case, a conflict exists inasmuch as every dollar awarded to the Hernandez family in the present action is potentially a liability to [Law Firm] in any subsequent indemnity action. It would be a violation of public policy for this court's rulings to put the firm in such a position that it could not assist its former client in the present action."

In its ruling, the trial court discussed a number of potential problems in bringing the cross-complaint for indemnity to trial, with respect to privilege and confidentiality problems between Law Firm and its former client, the Hernandez family. Specifically, these included whether there would be any waivers of attorney-client and work product privileges at trial, by the Hernandez plaintiffs or Law Firm, and whether Law Firm's witnesses would have to give professional opinions relating to the merits of the underlying Hernandez case.

The trial court further found that its prior order that the trial of the Hernandez complaint against Experts should go first, bifurcated from the indemnity cross-action, did not prevent the identified violations of public policy. Thus, summary judgment was granted, barring the cross-complaints for indemnity, based upon public policy under the particular circumstances presented in this action.[2]

## D

### Motions to Vacate Summary Judgment; Denial

Following the summary judgment ruling, Experts each filed a motion to set aside the judgment, based on extrinsic fraud that prevented them from having

---

[2] The trial judge further commented in the ruling, "Certainly my rulings which permitted an indemnity action to stand until this point in time prohibited [Law] firm from participating fully in discovery for reasons of potential client conflict as well as for reasons associated with malpractice insurance coverage for [Law] firm. It does not help the parties that I have essentially changed positions by the granting of this motion for Summary Judgment." We evaluate the actual ruling of the trial court, not its reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) Similarly, we may also disregard the trial court's reference at the hearing to the fact that Law Firm had not been sued by the Hernandez plaintiffs, as bearing upon whether the indemnity cross-action against Law Firm was properly brought. It is settled that a plaintiff may not restrict the identity of potential cross-defendants when equitable indemnity questions are raised. (*Allen v. Southland Plumbing* (1988) 201 Cal.App.3d 60, 64–65 [246 Cal.Rptr. 860]; *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 428 [261 Cal.Rptr. 626].)

a fair hearing on the summary judgment issues. They claim that newly discovered evidence demonstrated the extent of the relationship between Law Firm and the Hernandez plaintiffs' current counsel, Macaluso. He had received the referral from Law Firm at a time when he was also representing Law Firm's principal, Frantz, regarding the dissolution of his prior firm; also, Macaluso was sharing office space with them and was acting as cocounsel with them in other litigation. Therefore Experts contended that a conflict of interest prevented Macaluso from adequately representing the interests of the family, and this had not been disclosed to the court. Specifically, Experts contended that Macaluso had a continuing duty of loyalty and therefore an incentive not to sue Law Firm, even though the Hernandez plaintiffs could have done so. This evidence affected the respective potential liabilities of Law Firm and Experts for any professional negligence damages suffered by the Hernandez family, and was important to the overall question of entitlement to indemnity and whether Law Firm was a joint tortfeasor with Experts.

In opposition, Law Firm argued the public policy concerns they had raised still remained valid and were not affected or overridden by the limited nature of the relationship between Law Firm and Macaluso. They provided a declaration from plaintiff Mrs. Hernandez that she did not want to sue Law Firm because she did not think they had done anything wrong, and she had waived any potential conflict of interest between it and her new counsel, Macaluso.

In denying the motion, the new trial judge (Judge Bloom) adhered to the summary judgment ruling reasoning of the previous trial judge, stating: "[T]he public policy reasons behind Judge Reed's decision to grant summary judgment . . . remain valid [because] California law generally prohibits indemnity claims against attorneys by third parties where such claims violate public policy considerations."

At this point, the Hernandez family settled their malpractice claim against Forensis, having previously also settled with Robbins.[3]

Both Experts appeal the summary judgment and orders denying their motions to set aside the judgment.

---

[3] We received a request from Forensis to take judicial notice of its dismissal, and ordered that this request be considered concurrently with the appeal; it is now granted. (Evid. Code, §§ 452, subd. (d), 459.) Both dismissals are in the superior court file, which by stipulation is serving as the clerk's transcript in this matter.

## DISCUSSION

## I

## STANDARDS: SUMMARY JUDGMENT AND MOTION TO VACATE

■ Law Firm's motion for summary judgment asserted the bar of public policy, presented as a question of law. "A defendant moving for summary judgment must show either one or more essential elements of the plaintiff's cause of action cannot be separately established or there is an affirmative defense which bars recovery. If the plaintiff fails to set forth specific facts showing a triable issue of material fact as to that cause of action or defense, summary judgment must be granted. [Citations.]" (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373 [105 Cal.Rptr.2d 699] (*Kline*); see *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1547–1548 [80 Cal.Rptr.2d 94] (*Crouse*).)

■ Our inquiry on appeal requires us to apply the same analysis as did the trial court: Identifying the issues framed by the pleadings, and then determining whether the moving defendant "has produced evidence showing one or more of the elements of the cause of action cannot be established or there is a complete defense to that cause of action. If the defendant does so, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action or defense. [Citation.]" (*Kline, supra*, 87 Cal.App.4th at p. 1373.)

■ In the closest parallel situation to these facts, the question of whether allowing an equitable indemnity claim to be pursued between attorneys, such as concurrent counsel or cocounsel, is treated as a question of law to be addressed by the appellate court de novo, on a case-by-case basis. (*Musser, supra,* 28 Cal.4th at pp. 281, 284.) The overall issue is whether the policy considerations that underlie the rule barring indemnification claims in attorney representation situations will obtain in a particular fact situation and whether it would be unjust to deny cocounsel an opportunity to seek indemnity or contribution from a joint tortfeasor. (*Id.* at p. 285.)

■ In the case before us, we have an unusual fact situation, involving the policy considerations that apply to such an indemnity claim by an expert witness who was retained by an attorney to assist in the claims or the defense of a client, and where the issues presented arose from that legal representation and expert investigation. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 834–835 [60 Cal.Rptr.2d 780] (*Mattco Forge II*) [recognizing that litigation support professionals such as expert witnesses

may be held responsible for loss they directly cause].) We may extrapolate from the attorney concurrent representation authorities such as *Musser, supra,* 28 Cal.4th 274, that the rules governing the equitable indemnity issues presented here are similar and must also be addressed as questions of law on a case-by-case basis. The same approach as outlined in the attorney concurrent representation cases is appropriate, because these matters arose in the context of litigation and litigation support teams, such that during critical time periods when the alleged negligence took place, the attorneys and the expert witnesses were then allied in interest to pursue their common clients' cause.

■ With respect to the denials of Experts' motions to set aside the summary judgment, Experts had asserted extrinsic fraud in that they and the trial court were prevented from knowing the extent of the relationship between Law Firm and the Hernandez plaintiffs' current counsel, Macaluso. We review the trial court's ruling on that issue pursuant to an abuse of discretion standard. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 347 [165 Cal.Rptr. 792, 612 P.2d 882].)

II

CONTENTIONS ON APPEAL

Both Experts, Robbins and Forensis, contend the trial court erroneously applied the relevant case law to rule that Experts' indemnity claims were barred for public policy reasons. They argue on appeal that public policy actually supports allowing them to proceed with these indemnity claims, as follows: "The trial court's decision illogically protects negligent lawyers while saddling retained experts and the lawyers' own client with the damage exposure caused by that negligence. Public policy is more appropriately served by allowing claims for indemnity and forcing attorneys to accept responsibility for their mistakes."

Experts additionally contend that the arguments set forth by Law Firm are excuses, not viable defenses to a legitimate claim for indemnity arising from its own negligence. According to Experts, Law Firm's arguments are also completely speculative and, accordingly, any public policy concerns should have been addressed with a less drastic remedy than summary judgment. Moreover, the recent dismissals of the Hernandez complaint with prejudice have now arguably eliminated any potential public policy concerns on indemnity.

With respect to the denial of the motions to set aside the summary judgment, Experts contend that Law Firm inappropriately manipulated the attorney-client relationship, by referring the Hernandez plaintiffs to a closely affiliated attorney who had represented one of their attorneys in another case, and who was cocounsel in another matter, and who predictably sued only Experts, not Law Firm itself. Experts argue this course of action should not entitle Law Firm to protection from the cross-complaint.

In response, Law Firm argues the trial court's order granting its motion for summary judgment should be affirmed because the cross-complaints for indemnity and contribution violate recognized public policy considerations regarding the attorney-client relationship. They contend the cross-complaints were correctly barred as a matter of law, based on the public policy considerations disfavoring any "(1) creation of a conflict of interest between an attorney and the attorney's present or former clients; and (2) [any] requirement that attorneys breach fiduciary duties by divulging confidential client communications and information acquired during the representation of former clients."

### III

### RULES REGARDING EQUITABLE INDEMNITY; "ATTORNEY EXCEPTION"

To examine the parties' respective contentions, we first outline the rules regarding the availability of an indemnity cross-action in the attorney representation context. Such an action usually arises in predecessor/successor cases, and has also been addressed in the concurrent counsel situation. (*Musser, supra,* 28 Cal.4th at pp. 281–285.) We then apply those analogous rules to this situation involving allegations of expert witness professional negligence, in light of the public policy concerns identified by the trial court. We have been made aware in the record that the main action for professional malpractice has been settled, causing Experts to incur liability to the Hernandez plaintiffs, for which indemnification is now being sought.

■ " '[I]n the case law of equitable indemnity . . . one point stands clear: there can be no indemnity without liability. In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity. [Citation.]' [Citation.] '[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement.' [Citation.] 'It is well settled that a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss

through payment. [Citations.]' " (*Major Clients Agency v. Diemer* (1998) 67 Cal.App.4th 1116, 1126–1127 [79 Cal.Rptr.2d 613] (*Major Clients*).)

■ Throughout this analysis, we view the record in its entirety, which in this case includes the benefit of hindsight, in terms of the undisputed facts that the Hernandez plaintiffs have settled their professional negligence claims against both of these Experts. (See fn. 3, *ante.*) Because we are addressing questions of law and public policy, it is appropriate to discuss these important concerns of attorney-client confidentiality, loyalty, and privilege, with the benefit of all the factual and procedural development of the case and the record. It is necessary to decide these public policy issues on a case-by-case basis, and on the entire record as presented. (*Musser, supra,* 28 Cal.4th at pp. 281–285.) In doing so, however, we need not address the collateral estoppel arguments Forensis has advanced, concerning any future supplemental indemnity action it might file, should this cross-complaint be finally disposed of through the summary judgment that is currently on appeal. As we will show, these issues can be litigated in the current cross-complaints, in appropriate future proceedings after the reversal and remand we order today.

## A

## Background

■ Extensive case law has addressed the issue of "whether an attorney who is sued for malpractice by a former client may cross-complain for equitable indemnity against a successor attorney who has been hired to extricate the client from the condition created by the predecessor attorney. The cases hold that for sound public policy reasons, such cross-complaints are prohibited." (*Major Clients, supra,* 67 Cal.App.4th at p. 1129.) This rule represents the "attorney exception" to the general rule allowing indemnity to be sought among joint tortfeasors, as outlined in the landmark case of *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 598–607, footnote 9 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*). Some courts have said, " '*AMA* makes not a rule of general application but a rule riddled with exceptions. Partial indemnity is permitted only in appropriate cases.' [Citations.] . . . 'As suggested by Dean Prosser, the granting of indemnity in any situation represents a judicial choice of policy' [citation]; and courts have long recognized that 'the doctrine is not available where it would operate against public policy. [Citation.]' [Citation.]" (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 109–110 [32 Cal.Rptr.2d 263, 876 P.2d 1062], fn. omitted.)

" '[T]he ordinary rules of implied equitable indemnity in tort do not apply when the claim for indemnity is made against an attorney, is based on a breach of the attorney's duty to his or her client, and is brought by an adverse party in litigation which is the same as or related to that in which the alleged negligence took place. [Citations.] Perceiving that attorneys would be reluctant to accept cases that might result in indemnity claims, and, more significantly, that if faced with a potential indemnity claim, the attorney's sense of self-preservation might impinge on his or her duty of undivided loyalty to the client, these cases have established an exception to the ordinary rule of equitable indemnity. [Citation.]' [Citation.]" (*Major Clients, supra,* 67 Cal.App.4th at p. 1130.)

The Supreme Court in *Musser, supra,* 28 Cal.4th 274, has explained the basic reasons for the general rule that bars equitable indemnification among predecessor/successor counsel: "The first policy consideration is *avoiding conflicts of interest* between attorney and client: The threat of an indemnification action would arguably create a conflict of interest between the successor attorney and the client because the greater the award the successor attorney managed to obtain for the client in the malpractice action, the greater the exposure to the predecessor attorney in the indemnification action. [Citation.] The second policy consideration is *protecting confidentiality* of attorney-client communications: In order to defend against an indemnification action, the successor attorney might be tempted to compromise the confidentiality of communications with the client. [Citation.]" (*Id.* at p. 281.)

In *Musser, supra,* 28 Cal.4th 274, the Supreme Court was presented with indemnity claims between concurrent counsel for the same client, one a divorce attorney and one a bankruptcy attorney. Problems arose in the client's divorce case based on the inaccurate bankruptcy advice given by the bankruptcy attorney to the divorce attorney. The client sued the divorce attorney, and the divorce attorney sued bankruptcy counsel for indemnification of legal malpractice damages paid out to the client. The Supreme Court used a case-by-case approach to conclude that "the public policy considerations underlying the majority rule barring indemnification in predecessor/successor cases" were not implicated by the facts of that particular case, because a significant conflict between the bankruptcy attorney's duty to the client and the bankruptcy attorney's self-interest did not arise under those facts. (*Id.* at pp. 284–285.) Specifically, the court found no reason "to believe that an attorney's self-interest will interfere with loyalty to the client just because the attorney, as a joint tortfeasor, may face an indemnification claim if the client sues the attorney's concurrent counsel or cocounsel for malpractice." (*Id.* at

p. 284.) This seems to indicate that the Supreme Court did not find any continuing duty of loyalty to a former client would unduly interfere with the attorney's ability to conduct a defense on an equitable indemnification cross-action.[4]

▪ In addition to discussing the duty of loyalty among the counsel and client, the Supreme Court in *Musser, supra,* 28 Cal.4th 274, recognized that the other relevant policy to be considered was protecting the confidentiality of attorney-client communications: "The concern is that the law firm from which indemnification is sought may be unable to defend itself without revealing privileged client communications." (*Id.* at p. 284.) However, that was not a significant problem in that case because the client had settled with the divorce attorney and waived her attorney-client privilege with respect to the bankruptcy counsel's representation of her. (*Ibid.*) Accordingly, the Supreme Court concluded: "[B]ecause the policy considerations that underlie the rule barring indemnification claims in predecessor/successor cases do not obtain in this concurrent counsel case, it would be unjust to deny [divorce cocounsel] an opportunity to seek indemnity or contribution from [bankruptcy cocounsel] when [divorce counsel] has been sued by [client] for damages allegedly attributable to [bankruptcy cocounsel's] tortious conduct." (*Musser, supra,* at p. 285.)

This court in *Crouse, supra,* 67 Cal.App.4th at pages 1547–1548, dealt with somewhat similar issues, i.e., a fact pattern involving one attorney who had switched law firms and who was sued for malpractice by a client who had employed him at each of the firms on the same matter. He and his current firm sought equitable indemnification from the prior firm, on the basis that the prior firm was a joint tortfeasor in the act that had damaged the client (losing a promissory note and failing to follow up on it). This court held that the attorney and his current firm could seek equitable indemnity from the prior firm because there was only one injury to the client, for which the respective attorneys could each properly bear some responsibility. (*Id.* at pp. 1544–1548.) This court explained, "the policy reasons prohibiting an indemnity claim by the original tortfeasor attorney against the subsequent attorney are not applicable to an indemnity claim by the subsequent attorney against the former attorney. We therefore conclude there is no reason not to apply the general principles of *AMA,* and [the attorney and successor firm] may seek equitable partial indemnity for damages recovered by [the client] for [their] alleged . . . acts of malpractice." (*Id.* at p. 1548.) The Supreme

---

[4] California State Bar Rules of Professional Conduct, rule 3-310(E) provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Court in *Musser, supra,* 28 Cal.4th 274, cited *Crouse* as part of its analysis, without criticism, although one of the cases discussed in *Musser* said the holding in *Crouse* might have been stated too broadly, although the result was right. (*Musser, supra,* at p. 283, citing *Kroll & Tract v. Paris & Paris* (1999) 72 Cal.App.4th 1537, 1544, fn. 4 [86 Cal.Rptr.2d 78] (*Kroll*).)

Moreover, in *Crouse, supra,* 67 Cal.App.4th 1509, the attorney individually was found to have an additional basis for equitable indemnity from his prior firm: If he were held liable to the client for the original negligence in the loss of the note, and if the prior firm's negligence contributed to the loss of the note, he and the prior firm could be considered to be concurrent tortfeasors for the injury caused by loss of the note. This court found no impediment to the attorney's right to seek equitable indemnity from the prior firm "under traditional *AMA* principles of equitable indemnity among concurrent tortfeasors whose acts of negligence unite to cause a single injury," to the extent the attorney and his prior firm were concurrent tortfeasors for the legal services rendered. (*Crouse, supra,* 67 Cal.App.4th at p. 1548; see 1 Witkin, Cal. Procedure (4th ed. 2005 supp.) Attorneys, § 352, p. 109.)

In an appellate opinion primarily discussing good faith settlement issues, *Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1344–1345 [45 Cal.Rptr.2d 581] (*Mattco Forge I*), the court upheld the right of expert witnesses (an accounting firm) to bring a cross-complaint against a law firm for fraud, complete indemnity and partial indemnity. The accounting firm had been sued for malpractice by the client for whom the expert services were performed in an underlying action, pursuant to the law firm's representation of the client. In the expert malpractice action, the accounting firm brought a cross-complaint against the law firm, alleging inadequate professional care had been exercised in the underlying lawsuit. (*Ibid.*) The appellate court allowed the accounting firm to pursue its indemnity cross-action and fraud claims against the law firm, but not the negligence-based claims, because the law firm had not owed any professional duty to the accounting firm. (*Id.* at p. 1355.)

Under the above authorities, we next consider whether Experts may potentially be considered to be concurrent tortfeasors with Law Firm, which hired them, and entitled to seek indemnification, in the same sense that cocounsel can be considered to be concurrent tortfeasors who may be subject to liability for equitable indemnity.

## B

### Expert Witness Malpractice Claims; Respective Roles of
### Counsel and Experts

In the case before us, we are not dealing with concurrent counsel, but with an expert witness and an expert referral firm that were hired by the client's attorney, Law Firm, to assist in preparing the client's case. The client (the Hernandez family) did not select Experts, nor did the client have any known expertise in Experts' particular fields of endeavor (engineering and litigation support). However, the client sued Experts for professional negligence and misrepresentation of the degree of expertise possessed. Experts are cross-complaining for equitable indemnity based on the losses they incurred in settling the client's claims. These facts require us to examine the nature of the relationship between the engineering expert, the referral firm, and the law firm which hired them, in order to consider the equitable indemnity issues presented.

In *Mattco Forge II, supra*, 52 Cal.App.4th at pages 834–835, the court outlined the different types of situations in which a claim can be made that professional negligence caused the loss of a lawsuit, in the context of analyzing the appropriate evidentiary burden. The court said: "In today's technologically driven litigation, engineers, pathologists, serologists, physicians, appraisers, real estate brokers, and many other professionals, including accountants, frequently are hired to assist a party in preparing and presenting a legal case. 'Often they play as great a role in the organization and shaping and evaluation of their client's case, as do the lawyers. Those who provide these services are selected for their skill and ability and are compensated accordingly just as any other professional.' [Citation.] As experts, they are subject to liability if they perform the services negligently. . . . [¶] *Like other defendants in negligence lawsuits, litigation support professionals are only responsible for the losses they cause.* [Citations.] Thus, in situations where alleged negligent conduct *is analogous to* an attorney's mishandling litigation, a plaintiff should be held to the same [evidentiary] burden [i.e., proving a "trial within-a-trial" in a malpractice action]." (*Ibid.*, first italics added.)

By bringing their professional malpractice action against Experts, the Hernandez family alleged that Experts' allegedly negligent conduct was analogous to legal malpractice, within Experts' specialized sphere of knowledge. The Hernandez plaintiffs would have to prove that their underlying wrongful death case would have been more successful had the expert performed better, within the trial-within-a-trial format. (*Mattco Forge II, supra*, 52 Cal.App.4th at pp. 834–835.)

■ By seeking equitable indemnity against Law Firm, Experts are contending Law Firm personnel are joint tortfeasors with them in the representation of the Hernandez plaintiffs. We seek to analyze the relationship between Law Firm and the retained Experts, for purposes of assessing comparative fault potentials. In the California Expert Witness Guide (Cont.Ed.Bar 2d ed. 2005) (CEB treatise), section 8.28, page 290, the authors outline the duty of an attorney who hires an expert witness, that is, to "make sure that the expert, particularly the inexperienced expert, understands the governing legal principles and elements that each party to the litigation must prove in order to prevail." The authors continue: "An expert is not a mechanical toy that can simply be wound up and turned loose. Regardless of the expert's skill, it is the lawyer's responsibility to make sure that his or her expertise is presented to the trier of fact in an admissible and persuasive way. To accomplish this task, the lawyer needs to understand the substantive details of the expert's testimony and field of expertise." (CEB treatise, *supra*, § 8.29, p. 291.)

The authors of the CEB treatise recommend that counsel who hires an expert ask many questions in order to ensure that the expert's testimony is presented in a form that can be understood by the trial judge and jury. (CEB treatise, *supra*, § 8.30, p. 292.) The attorney is also required to ensure that an expert's declaration offered in support of or in opposition to a summary judgment makes an adequate showing concerning the expert's qualifications and expertise, as would be required if the expert were testifying at trial. (*Id.* at § 16.2, pp. 596–597; see *Salasguevara v. Wyeth Laboratories., Inc.* (1990) 222 Cal.App.3d 379, 384–387 [271 Cal.Rptr. 780].)

To compare the roles of expert witnesses in litigation, and attorneys who are concurrent counsel, we turn to *Musser, supra,* 28 Cal.4th 274. There, the problem was that the bankruptcy specialist (an expert of sorts), who had been retained by the client to obtain relief from the automatic stay imposed by the bankruptcy court during the dissolution proceeding, gave advice to cocounsel that was contrary to well-established legal authority. (*Id.* at p. 277, fn. 2.) When cocounsel acted upon it, she became liable for malpractice to the client. These facts are analogous to those before us, because these Experts as retained litigation support professionals are similar in function to concurrent counsel within the fields of their respective expertise. Experts could not independently communicate their knowledge and opinions to the trial court, and had to act through the intermediary of the counsel who retained them on behalf of the client, the Hernandez family. Experts were not involved in legal strategy, but rather supplied expertise based on the physical facts of the

underlying case, within the applicable legal standards as supplied to them by counsel. Consequently, as in *Musser*, the concurrently acting litigation participants, Experts, should ordinarily be permitted to sue Law Firm for equitable indemnification of professional malpractice damages for which they have become liable. (*Id.* at p. 279.)

In other words, this case initially falls within the general rule of permissible equitable indemnity claims as outlined in *AMA, supra,* 20 Cal.3d 578. However, that is not the end of the inquiry, as we must next turn to the acknowledged public policy concerns to see if the "attorney exception" to the general rule should also be interpreted as an analogous exception applicable to expert witnesses/litigation support professionals. (See *Major Clients, supra,* 67 Cal.App.4th at pp. 1127–1133.)

C

Effect of Rules on Public Policy Considerations

As identified by the trial court, an otherwise permissible equitable indemnification claim may become improper if certain important public policy principles are violated by it. Specifically, it must be asked in this case whether Law Firm will be able to defend itself against the cross-complaint while: 1) avoiding significant conflicts of interest between itself and the former client, the Hernandez family; and 2) protecting the confidentiality of prior attorney-client communications.

An additional inquiry that must be made on appeal is whether the trial court erroneously denied Experts' motions to set aside the summary judgment ruling, on the basis that the trial court did not have before it the full picture of the Law Firm/Macaluso successor counsel/cocounsel relationship, when the summary judgment proceedings were held.

To address these issues, in light of the respective roles of the cross-complainants Experts and the cross-defendant Law Firm (its professional personnel), we seek to determine if public policy considerations support the trial court ruling as a matter of law, including the undisputed facts that the Hernandez plaintiffs have now settled with these experts on the professional malpractice claims, for a monetary amount. (See fn. 3, *ante.*)[5]

---

[5] The undisputed facts of the settlement of the main complaint essentially obviate the concerns that the trial court showed in its ruling about a potential trial of the professional malpractice action, with regard to a potential conflict of interest on the part of Law Firm and its attorneys: "Should they be permitted to testify at the trial of the present Hernandez action filed against [Experts], one of two scenarios will play out (1) should they testify that they proceeded in the underlying case because it was a good case and they felt that could win, they

█ Not only the considerations identified by the trial court are important, but also a further public policy exists: that of protecting the professional interests of all expert witnesses generally to participate in litigation, and the interests of the judicial system in obtaining the assistance of such expertise. These interests are significant enough to warrant an expert's being accorded a right to recourse against those responsible, if any professional negligence should occur on the part of counsel who retained those expert witnesses, with respect to presenting their evidence and defining the proper scope of the experts' duties and obligations within the litigation setting, if any harm to the client should occur. Such a right to recourse for expert witnesses could include equitable indemnity claims.[6]

## 1. Conflicts of Interest Prevention

In *Musser, supra,* 28 Cal.4th at page 281, the trial court examined two cases which arose in the context of insurance litigation, and which dealt with whether indemnity claims were permissible, when made by concurrent counsel or cocounsel against one another for damages arising from their joint representation of a mutual client. (*Kroll, supra,* 72 Cal.App.4th 1537; *Shaffery v. Wilson, Elser, Moskowitz, Edelman & Dicker* (2000) 82 Cal.App.4th 768 [98 Cal.Rptr.2d 419] (*Shaffery*).) In *Kroll,* the Court of Appeal held the policy considerations for barring such an indemnity claim did apply. (*Kroll, supra,* at p. 1542.) "Although the two counsel 'shared the common goal of defending [the client] in the underlying lawsuit,' the Court of Appeal observed, 'they filled separate roles.' [Citation.] Kroll & Tract was hired by the insurer, who provided a defense under a reservation of rights, while Paris & Paris was the client's personal counsel and remained as *Cumis* counsel." (*Musser, supra,* 28 Cal.4th at p. 282, citing *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494].) The Supreme Court continued its discussion by outlining another such inappropriate indemnity situation: "In *Shaffery, supra,* 82

---

will nonetheless later be required to hire experts to attempt to reduce or avoid any claim of their responsibility and/or Plaintiff's loss in any indemnity action against their firm. Alternatively, (2) should they testify that there were problems with the case and the clients were so advised that in and of itself constitutes a conflict and constitutes conduct detrimental to their client's claim."

[6] We disagree with the suggestion of Law Firm that it would be sufficient for an expert witness who is sued by a former client for professional malpractice to bring an answer to the complaint that includes an affirmative defense of comparative negligence on the part of the retaining attorney. Such an affirmative defense would not suffice to protect Experts' interests, in the same manner as an opportunity to cross-complain for indemnity against an attorney who retained that expert, should there be any basis for a finding of joint tortfeasor status between the expert and the attorney. Especially here, where the original professional negligence complaint by the clients against Experts has been settled, there is no basis for any remaining affirmative defense to the now-dismissed complaint to take the place of a cross-complaint for indemnity.

Cal.App.4th 768, an insurer filed a malpractice action against an attorney whom the insurer had hired to represent the insured in an employee's action brought against the insured for sexual harassment, and the attorney filed a cross-complaint for equitable indemnity against the law firm hired by the insurer to act as monitoring counsel in the underlying action. After reviewing the cases, the Court of Appeal barred indemnity. 'In substance if not in form, we find the case before us analytically indistinguishable from [*Kroll*], and conclude the result must be the same.' (*Shaffery*, at p. 778.)" (*Musser, supra,* 28 Cal.4th at p. 284.)

However, in *Musser,* the court found it would be unjust to prevent the family law cocounsel from cross-complaining for indemnity against the negligent bankruptcy cocounsel, "because the policy considerations that underlie the rule barring indemnification claims in predecessor/successor cases do not obtain in this concurrent counsel case," where the family law counsel was sued by the client for damages allegedly attributable to the bankruptcy attorney's tortious conduct. (*Musser, supra,* 28 Cal.4th at p. 285.)

We think this case is more like *Musser, supra,* 28 Cal.4th 274, than like the two authorities, *Kroll, supra,* 72 Cal.App.4th 1537, and *Shaffery, supra,* 82 Cal.App.4th 768, discussed in *Musser. Kroll* and *Shaffery* represent fact patterns in which the concurrent counsel were not as interdependent upon each other as the Experts and Law Firm were in the case before us. These Experts were clearly dependent upon Law Firm to present the products liability law and the expert testimony to the trial court in the underlying action in a nonnegligent manner. (See CEB treatise, *supra,* §§ 8.28–8.29, pp. 290–291.) These Experts did not have expertise in products liability law and litigation, but rather in engineering and in expert referral matters. We do not find the *Kroll* or *Shaffery* authority to be controlling here, because in those cases, the roles of the *Cumis* counsel and the monitoring counsel were different in nature (more independent and therefore more subject to a conflict of interest) from the roles of these Experts, who were actually litigation support professionals, rather than concurrent counsel for whom conflicts of interest would be a serious problem.

The policy problem here is whether, in order to defend against the cross-complaint for indemnity by Experts, Law Firm must demonstrate that the former client Hernandez family's case had no substantive merit, and whether this course of action would create a significant conflict of interest with its own former client. (Plaintiff Mrs. Hernandez has waived any potential conflict of interest between Law Firm and her new counsel, Macaluso.) Law Firm suggests that its newly retained experts in this cross-

action could and would testify that the Hernandez family would not have gotten any damages from the forklift manufacturer, due to worker's compensation coverage for the decedent, and its technical experts could testify that there was no causation of the forklift alarm system for the death of the decedent (there were other causes). (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282 [36 Cal.Rptr.2d 537, 885 P.2d 950] [where a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of the other client, a conflict of interest exists].)

■ The trial court ruling could not resolve whether Law Firm would be impliedly waiving its work product privilege with respect to the preparation of the underlying wrongful death case. In any case, the Hernandez family has settled its claims versus Experts. Also, an expert ordinarily cannot testify on the ultimate issues in the case, such as whether the Hernandez family should have won its underlying product liability claim after all. (See *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 971–974 [105 Cal.Rptr.2d 88].) The opinions of Law Firm attorneys or its own newly retained Experts on the ultimate issues would not be valuable to resolve the trial-within-a-trial of the underlying action, as relevant to the indemnity issues.

■ In any case, it appears that the Supreme Court has found there is a diminished duty of loyalty toward the former client, at least on the part of an attorney who is defending him- or herself against an equitable indemnity claim by a fellow litigation professional, in a case arising out of the same client representation, similar to what we have here. (*Musser, supra,* 28 Cal.4th at p. 283; Cal. Rules of Professional Conduct, rule 3-310(E).)[7]

In *Mattco Forge I, supra,* 38 Cal.App.4th at page 1355, the appellate court overturned the trial court's dismissal of the expert accounting firm's cross-complaint for indemnity and fraud against the law firm which had consulted it. In that case, there had been no good faith settlement by the law firm which could operate to bar that cross-complaint, and therefore the court allowed the expert's cross-complaint to proceed.

---

[7] The duty of loyalty was not a significant problem in *Musser, supra,* 28 Cal.4th 274, 284, as to the cross-complaint, because the client had settled with the divorce attorney and waived her attorney-client privilege with respect to the bankruptcy counsel's previous representation of her. (*Ibid.*) A concurring opinion in the Supreme Court case disagreed that the extent of any waiver of attorney-client privilege was a necessarily presented issue in the case. (*Id.* at p. 287 (conc. opn. of Kennard, J.).) Here, because Law Firm was directly responsible for hiring Experts, as part of the case preparation, the same privilege concerns as to the client did not apply, and any waiver of attorney-client privilege by the client is not dispositive.

Here, too, none of the public policy reasons for barring such a cross-complaint should apply. It is true, as stated in *Major Clients, supra*, 67 Cal.App.4th at page 1130, " '[T]he ordinary rules of implied equitable indemnity in tort do not apply when the claim for indemnity is made against an attorney, is based on a breach of the attorney's duty to his or her client, *and is brought by an adverse party in litigation* which is the same as or related to that in which the alleged negligence took place.' " (Italics added.) Here, however, these Experts were originally not an adverse party to the original client, the Hernandez family. Also, these Experts are not suing Law Firm on the basis of advice it directly gave to the client. There is no real danger that Law Firm must breach its duty of loyalty or confidentiality to the original client, the Hernandez family, in order to defend against Experts' cross-complaint for indemnity. Experts are not seeking to enforce professional duties owed to them by Law Firm, but rather are seeking to prove joint tortfeasor status with Law Firm.

We think Law Firm's argument that there is a fatal conflict of interest here misses the main point, because to defend itself against the equitable indemnity claim, Law Firm must primarily provide information about its own legal strategy and judgment, with respect to utilizing the technical expertise that Experts were providing, and with respect to showing how that material was presented to the trial court in the underlying case. This has very little to do with any client communications or client protection as to the Hernandez family, who were not at the accident scene and who do not know anything technical about forklift manufacturing, at least on this record. It also has nothing to do with any worker's compensation damages issues that might have restricted their recovery, if any, against the manufacturer.

Here, as in *Musser*, the policy considerations regarding the former attorney-client relationship do not outweigh the policy considerations that favor allowing equitable indemnification between joint tortfeasors. (*Musser, supra*, 28 Cal.4th at p. 285.)

## 2. Confidential Communications Protections

The record is incomplete on the extent to which the Hernandez family had waived any attorney-client privilege with respect to its communications with Law Firm. At one hearing, new counsel represented that the Hernandez family had waived any attorney-client privilege with respect to its communications with Law Firm, at least so that Law Firm representatives would be able to testify that they blamed Experts for "screw[ing] up" the underlying

meritorious action. However, Law Firm also argued to the trial court that it should not have to disclose privileged communications from the client Hernandez family in order to defend against the indemnity claims.

Experts' indemnity claim necessarily asks whether there was a breach of the duty of care by Law Firm toward its client (the plaintiffs in the instant case), to establish the necessary joint tortfeasor status. However, we do not believe that attorneys who are defending against such an indemnity claim will be required to betray the client's confidential communications, because the issues in the indemnity matter deal primarily with legal strategy and litigation decisionmaking, with regard to the matters within the scope of Experts' technical knowledge and the applicable law. Client communications were not necessarily involved in that portion of the litigation, to any sufficient degree as to invoke public policy protections against such cross-complaints for indemnity brought by Experts, such as we have here.

 Evidence Code section 958 provides that the attorney-client privilege does not apply to communications that are relevant to an issue of breach of duty arising out of the attorney-client relationship, as to communications by the lawyer or by the client. We think the trial court erred in finding that Law Firm could rely on attorney-client privilege to protect itself from these claims of equitable indemnification brought by Experts which Law Firm itself had retained. These expert witnesses have provided enough of a record to controvert Law Firm's contention that it could not conduct a defense of the bifurcated cross-complaint indemnity matters, without betraying confidential client communications obtained from the former client (the Hernandez family). This is especially true because these cross-complaints are brought by Experts, including an expert referral firm, who were not percipient witnesses of the accident or of the family relationships, such as would have been relevant in the underlying wrongful death claims. Rather, the allegations of the cross-complaints for equitable indemnification focused on matters of litigation strategy and preparation, which have not been shown to jeopardize confidential client communications.

For all these reasons, the trial court erred in granting summary judgment. Moreover, the trial court erred in denying the motions to set aside the summary judgment ruling. The issues concerning whether Law Firm's attorneys were joint tortfeasors liable to Experts under equitable indemnification theories could not be fully addressed without further proceedings directed toward determining the respective roles and duties of the expert witnesses and the attorneys involved.

## DISPOSITION

Summary judgment is reversed and the order denying the motions to set aside the judgment is reversed for further proceedings consistent with the principles set forth in this opinion. Costs on appeal to Experts.

McConnell, P. J., and Benke, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 7, 2005. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.